Kingsley *v.* Balcome.

---

4    131
62h  130

4    131
72h  509

LIVINGSTON GENERAL TERM, August, 1848. *Maynard, Sill, and Selden,* Justices.

## KINGSLEY *vs.* BALCOME.

A parol promise, made without consideration, to indemnify and save the promisee harmless from all damages by reason of his becoming bail for a third person, is void as being within the statute of frauds.

To render the promise of a third person to answer for the default of another valid, under the statute of frauds, there must be a contract, upon good consideration, such as would be binding at common law, and it must be evidenced by a writing.

To support an action upon such an undertaking, on the ground of there being a new and original consideration for it, the new and original consideration must be such as to shift the actual indebtedness to the new promiser ; so that, as between him and the original debtor, he is bound to pay the debt as his own ; the latter standing in the relation of surety to him. *Per* SILL, J.

The cases upon this subject examined and commented upon. *Per* SILL, J.

*Perley* v. *Spring,* (12 *Mass. Rep.* 297,) doubted ; and *Chapin* v. *Merrill,* (4 *Wend.* 557,) overruled.

Kingsley *v.* Balcome.

THE plaintiff became bail for the appearance of one McMillen at the Ontario general sessions, to answer to a charge of perjury.   He entered into the recognizance at the request of the defendant, who in consideration that the plaintiff would become such bail, " undertook and promised that the said Peter McMillen should appear," &c. and that he the defendant " would indemnify and save harmless" the plaintiff from all damages by reason of becoming such bail.   McMillen failed to appear, and the plaintiff was compelled to pay the penalty of the recognizance.   This action was brought upon these promises of the defendant, to recover the money thus paid.   The defendant pleaded that the promise was not in writing, and was therefore within the statute of frauds.   To this plea the plaintiff demurred.

*E. G. Lapham,* for the plaintiff, cited *Harrison* v. *Sawtell,* (10 *John.* 242;) *Chapin* v. *Merrill,* (4 *Wend.* 657;) *Perley* v. *Spring,* (12 *Mass. Rep.* 297;) *Farley* v. *Cleveland,* (4 *Cowen,* 432;) *S. C. in Error,* (9 *Id.* 639;) *Blake* v. *Cole,* (22 *Pick.* 97;) *Chapin* v. *Lapham,* (20 *Id.* 467;) *Johnson* v. *Gilbert,* (4 *Hill,* 178.)

*H. O. Cheesebro & A. Worden,* for the defendant, cited *Fisk* v. *Hutchinson,* (2 *Wilson,* 94;) *Buckridge* v. *Darnall,* (2 *Ld. Raym.* 1085;) *Rogers* v. *Kneeland,* (13 *Wend.* 114;) *Carville* v. *Crane,* (5 *Hill,* 483;) *Barker* v. *Bucklin,* (2 *Denio,* 45;) *Gallager* v. *Brownell,* (6 *Cowen,* 346;) 2 *Pothier on Obligations,* (453, 4;) *Kirkham* v. *Masten,* (2 *B. & Ald.* 613;) 1 *H. Black.* 121; 2 *Penn. R.* 80; 1 *Cowp.* 228.

*By the Court,* SILL, J.   " In the following cases, every agreement shall be void unless such agreement, or some note or memorandum thereof, expressing *the consideration,* be in writing, and subscribed by the party to be charged therewith. 1. Every agreement which by its terms is not to be performed within one year from the making thereof.   2. Every special promise to answer for the debt, default or miscarriage of anoth-

er person." (2 *R. S.* 136, § 2.) If this were a new question, it would not appear to me to be one of any difficulty. The contract would seem to be both within the letter of the statute, and the mischiefs which it is designed to remedy or prevent. To the plain common sense of every mind, the promise of the defendant would be deemed a promise to answer for the default of McMillen, and to indemnify the plaintiff for his miscarriage. It is not however to be denied, that the learning, and ingenuity, not to say subtlety, which have entered into the decisions giving construction to this and other similar statutes, have made its application in many cases, a matter of great doubt and difficulty. Driven, as we are by these adjudications in many instances, from the obvious meaning which ordinary minds would at once give the law, we have now to look to these decisions, difficult as they sometimes are to be reconciled, for the meaning of this, otherwise plain statute. Unless among them we find some adjudication the other way, to which we are impelled to bow as authority, I shall declare it as my opinion that this promise is within the statute.

The case of *Harrison* v. *Sawtell*, (10 *John.* 242,) is clearly distinguishable from this. Harrison, at the request of Sawtell, and upon his promise of indemnity, became bail in a civil action for one Foote, who failed to surrender himself, and Harrison was compelled to pay the judgment. It appeared, however, that Sawtell was the real defendant in the action, and Foote the nominal one. The court say that Sawtell was bound to protect Foote. That in fact Harrison was bail for Sawtell, who was the real defendant in the first suit. And the action in favor of Harrison against Sawtell was sustained upon the ordinary, familiar rule, that a principal is always bound to indemnify his bail.

*Farley* v. *Cleveland*, (4 *Cowen*, 432,) was a case differing in principle from the last case, as well as the one at bar. Farley held a note against one Moon for $100. Moon sold and delivered to Cleveland 15 tons of hay, in payment for which Cleveland promised to pay Moon's note held by Farley. This was held to be a promise by Cleveland, not to pay Moon's debt,

but his own. ₒ By the sale of the hay, and the agreement between them, the debt had become Cleveland's, and Moon stood to him in the relationship of surety.

In *Johnson* v. *Gilbert*, (4 *Hill*, 178,) Gilbert had become indebted to Johnson, and gave him a chattel note which he held against a third person, endorsing it in blank and promising that it should be paid at maturity. The note was not paid, and an action was brought by Johnson against Gilbert. The court held that the promise of the latter was to pay his own debt, and the case was disposed of on this principle.

The point now under discussion was not considered in *Blake* v. *Cole*, (22 *Pick*. 97.) The action was by one surety against his co-surety, for contribution. The court held that, the defendant having become surety at the request of the plaintiff and on his promise of indemnity, the latter could not call on the former for contribution. The principle laid down was "when a surety joins in a bond at the request of him who sues for contribution, he shall not be held to pay." The case, in this branch of it, has no reference to the statute of frauds.

In *Chapin* v. *Lapham*, (20 *Pick*. 467,) the defendant had requested the plaintiff to assist his minor son in business, and promised in case he would do so the defendant would indemnify him. The plaintiff signed a note with the minor son, and was compelled to pay it. The court held the defendant's promise was original and not collateral, because the son, being under age, could not make a promise, and hence there was no obligation to which the defendant's undertaking could be collateral. By necessary implication, if the son had been of full age the defendant's promise would have been within the statute.

*Perley* v. *Spring*, (12 *Mass. Rep.* 297,) is also cited by the plaintiff; and if it is a true exposition of the law, it must be admitted it will go far to sustain this action. But the case evidently was not well considered, and no authority is cited to sustain it. Dearborn was in jail on civil process. He placed in the hands of Spring property to enable him to procure bail, and Spring procured Perley to become bail for Dearborn, prom-

ising to indemnify and save him harmless. Dearborn made default, and Perley had to pay the judgments, and brought a suit against Spring upon the promise of indemnity. The court sustained the action, and in doing so laid down or assumed the following positions: 1. The promise of Spring was to answer for the default of Dearborn. 2. The uniform construction the English courts have given to this branch of the law has been to consider it as applicable only to pre-existing debts, which are considered as not furnishing a consideration for the promise. The consideration in such cases may be said to have been past, and some new consideration is necessary to support such a parol promise. 3. But when the promise is prospective, to pay the debt of another which may accrue in consequence of the very promise made, this is considered as not affected by the statute. 4. The consideration is then co-existing with the promise, and it is the original debt of the party making it. It was necessary to lay down these as settled legal propositions to sustain the judgment in that case. To my mind all these, except the first, are erroneous. The first point decided was that the true construction of the contract made it a promise to answer for the default of Dearborn. To this I agree. And in such case our statute says there must be both a *consideration and a writing*. And this alone might be regarded as effectually disposing of that case. But a moment's reflection must convince any one that the court was mistaken in all the other points. The uniform decisions of the English courts are directly different from what they are supposed in the case cited; as a reference to the authorities cited in this case by the defendant will show. Perhaps no single class of cases arising under this statute is so numerous as those where credits are given upon the promise of a third person to see the debt paid. In those cases the credit is given on the strength of the promise and from a good consideration for it. But universally in England and in this state the contract is held void for want of a writing. The controlling principle which is distinctly laid down in *Perley* v. *Spring*, is—and upon such principle alone could it have been so decided—that the promise of a third per-

son to answer for the default of another is binding if there is a valid consideration for it. It need only be plainly stated to expose the error. Two things are requisite—1. There must be a contract upon good consideration, such as would be binding at common law. 2. It must be evidenced by a writing. Without the statute, if there was no consideration, the contract would be void. And if now a consideration alone will give vitality to the promise, the statute is a dead letter, and the law remains as it was before the statute was passed. The decision in that case is clearly not law, in this state.

The only remaining case cited by the plaintiff, and perhaps the only one that bears directly upon the question here, is that of *Chapin* v. *Merrill*, (4 *Wend.* 657.) The court there correctly lay down the principle controlling this class of cases. " When the promise is an original *absolute* promise, it is not within the statute. Otherwise if it is collateral to the promise or undertaking of another." But in my judgment there was an error in the application of this principle to the facts of that case. Chapin, at Merrill's request, and upon his promise of indemnity, entered into a covenant to a mercantile house, that if they would supply goods to one Ransom he would pay them such sum as should remain unpaid for the goods by Ransom, not exceeding $2000. Upon this covenant the plaintiff was compelled to pay $600; and brought his action to recover it upon Merrill's promise of indemnity. The court held Merrill's promise to be an original, and not a collateral undertaking, and therefore not within the statute. The assumption that this was not a collateral promise, it is conceived, with all respect, was a mistake. When Ransom availed himself of the arrangement made for his benefit, and used the credit of Chapin, he adopted and sanctioned what Merrill had done for him, and created the relationship of principal and surety between himself and Chapin. The law implied a promise on his part to indemnify Chapin, his surety. Can there be a plainer proposition, or one better settled, than this? Or can there be a doubt that Merrill's promise was collateral to this implied undertaking of Ransom? If Merrill had promised in writing, he certainly

would have been only Ransom's surety to Chapin, under the circumstances of that case. The fact mentioned in the opinion of the court, that Chapin's covenant was to another mercantile firm, is no answer. Ransom had assumed two distinct obligations, one to the vendors of the goods, by which he was to pay them, and another to Chapin, by which he was to be indemnified. Then the promise of Merrill was not collateral to the first, but to the last it clearly was. The error of the learned judge grew out of an attempt to trace an analogy between the facts in that case and those of *Tomlinson* v. *Gill*, (*Amb.* 330,) and *Read* v. *Nash*, (1 *Wilson*, 305.) The first case, even if authority, (in reference to which see 1 *Eden's Rep. pref. p.* 4, and *Marvin's Bibli.* 58,) does not sustain the decision in *Chapin* v. *Merrill.* Gill promised the widow and administratrix of an intestate that if she would allow him to join in the administration of the estate he would make up any deficiency of assets to pay the intestate's debts. Upon a bill filed by creditors upon this promise he was held liable. This plainly enough was not a collateral promise. The creditors had no other person's liability for these debts. They only had a lien upon the assets. Gill's promise was that if he was permitted to take possession and control of the property he would see all the debts paid. He was to do this for the privilege of being administrator. In other words, he undertook to make the property produce enough to pay the debts. The other case is still less in point. One Twack sued Johnson for an assault and battery. As he was about to proceed to trial Nash promised him if he would withdraw his record and postpone the trial he, Nash, would pay the plaintiff £50. The record was thereupon withdrawn; and a suit was brought by Read, Twack's executor, to recover this £50. The court held the promise original, because Johnson did not owe the £50. He had never promised to pay it, nor had he sanctioned the act of Nash, nor had any thing to do with it. He did not owe the plaintiff in the suit any thing. He may have beaten Twack on the trial, and until there was a recovery, Johnson was not in any manner indebted to a creditor of Twack. The case of *Read* v. *Nash* was examined in *Fish* v. *Hutchinson*, (2 *Wil-*

*son,* 94,) and the true distinction there taken. In this latter case a promise by a third person to pay a judgment if the plaintiff would stay execution, was held within the statute. In the English courts the cases of *Tomlinson* v. *Gill,* and *Read* v. *Nash,* have not been understood as they are construed in *Chapin* v. *Merrill.* (*Green* v. *Cresswell,* 10 *Adol. & E.* 453.)

The case in 4 *Wendell,* so far as I can discover, stands unsupported by any decision in our courts. It has not been relied on or cited as authority for any subsequent adjudication, nor received the express sanction of any of our courts or judges. The only place where I find it referred to is 5 *Hill,* 486, where it is said the promise of Merrill was collateral to the implied one of Ransom, and a liberal construction of the statute would have embraced it. Without examining the authorities in detail on the side of the defendant, it is sufficient to say that their general tenor goes strongly to sustain this plea. The facts in the case of *Green* v. *Cresswell* above cited, are precisely like these in the case before us, except that the plaintiff was bail in a civil case instead of a criminal one. That case was decided in the queen's bench in 1839. It was held over a term for advisement; and Lord Denman delivered the unanimous opinion of the court for the defendant. The reasons there given are entirely applicable to the case at bar, and to me appear satisfactory. From a careful examination of all the authorities cited by the counsel, and many others, I am satisfied that the plea is good.

In the course of this examination I have seen it repeatedly laid down as the rule, that " when the promise arises out of some new and original consideration of benefit or harm moving between the newly contracting parties," the promise is not within the statute. Without some qualification, this is not the rule. If this were literally so, the statute would be nullified; for, as has been shown before, a promise would be always binding when there is a good consideration for it. Whenever I have met this dictum, (for such only I conceive it,) I have examined every authority cited in support of it, but do not find it sustained. The true rule is that the new " original considera-

tion" spoken of must be such as to shift the actual indebtedness to the new promiser. So that as between him and the original debtor he must be bound to pay the debt as his own, the latter standing to him in the relation of surety. The cases of *Farley* v. *Cleveland*, (4 *Cowen*, 432,) and *Barker* v. *Bucklin*, (2 *Denio*, 45,) are examples.

There must be a judgment for the defendant, with leave to the plaintiff to reply on payment of costs.

Same Term.    *Maynard, Welles, and Selden,* Justices.