Sutliee, J.
By the act of February 19, 1810, “ for the prevention of frauds and perjuries,” it is provided: “ Sec. 5. That no action shall be brought whereby to charge the defendant, upon any special promise to answer for the debt, default or miscarriage of another person; or to charge any executor or administrator upon any special promise to answer ' damages out of his own estate; or to.charge any person upon any agreement made upon consideration of marriage, or upon any contract cr sale of lands, tenements or hereditaments, or any interest in or concerning of them; or upon any agreement that is not to be performed within the space of one year from the making thereof, unless the agreement upon which such action shall be brought, or some memorandum or ¡ ‘e thereof be in writing, and signed by the party to be charged therewith, or some other person thereunto by him or her lawfully authorized.”
This section 5 of our statutes seems to be a transcript of section 4 of the English statute of “frauds and perjury.” (Stat. 29, Car. II, chap. 2.) It is, therefore, important in any case of doubt, to ascertain what construction the statute has there received upon such doubtful question.
It is certain that for a time there was a degree of uncertainty in the English courts, in regard to the question, whether such contracts or promises of indemnity as expressed in the record before us, fell within section 4 of their statute. But the law may now undoubtedly be regarded as settled in England, under their construction of the statute, that where there .is an implied liability on the part of a third person to reimburse the plaintiff, or remunerate him for the damage, or loss *225 suffered on his, such third person’s, account, the promise of the defendant, in an action upon an alleged undertaking to indemnify the plaintiff, is ragarded as an undertaking collateral to the implied liability of such third person, and so falls within the statute, and must be in writing, and signed by the defendant or some one by him authorized to sign the same. Winkworth v. Mills, 2 Esp. Rep. 484; Greene v. Cresswell, 10 Adol. & Ell. 453; and Cresswell v. Wood, Ib. 460. The opinion in the case of Winkworth v. Mills, pronounced by Lord Kenyon, at nisi prim, in 1796, very clearly recognizes the necessity of the promise in such cases being in writing, to-constitute a legal cause of action, or to support the action and authorize a recovery.
It is, however, true, that in the case of Thomas v. Cooke, in the court of king’s bench, at Michaelmas term, 1828,. where A., at request of B., entered into a bond with him and C., to indemify D. against certain debts due from C. and D., and B. promised to save A. harmless from all loss by reason of the bond, it was held, that such promise was binding, although not in writing, and that A. might recover from B. the whole of the moneys which he was compelled to pay by virtue of the bond. 8 Barn. & Cress. 728.
But in the case of Greene v. Cresswell, 10 Adol. & Ellis, 453, in the same court (queen’s bench), at the Trinity term, 1839, it was h'eld, that no action lay upon the promise of the defendant, not in writing, to indemnify the plaintiff for becoming bail for a stranger, at the request of the defendant, the plaintiff having suffered loss as such bail. Lord Denman, C.J.,. in delivering the judgment of the court in the case, in opposition to the case of Thomas v. Cooke, refers to that decision, and says: “ But the reasoning in that case does not appear to us satisfactory, in support of the doctrine there laid down; which, taken in its full extent, would repeal the statute. Eor every promise to become answerable for the debt or default of another may be shaped as an indemnity but even in that shape, we can not see why it may not be within the words of the statute. Within the mischief of the statute it most certainly falls.”
*226 The judgment pronounced, in this case, seems to have been regarded as a true exposition of the law in England, and this ■construction of the statute is there regarded as settled law.
In this country, it must'be confessed, there has been a great contrariety of opinions in different states; and, in some instances, by different courts in the same state. The decisions in New York have not been uniform upon this subject; but at this time the law may doubtless be regarded, in that state, as settled in conformity with the law in England. The case of Kingsley v. Balcombe, at the Livingston general term of the supreme court, August, 1848 (4 Barb. Rep. 131), (Maynard, Sill, and Selden, justices), was an action brought by the plaintiff to recover damages of the defendant, upon his undertaking or promise to save the plaintiff harmless from all damages by reason off his becoming bail for a third person, the plaintiff having, in consideration of such promise, become bail and been damnified. It was held by the court, that a valid contract must not only be proved to have been made, but the same must be shown to have been in writing and signed by the defendant, or by some one by him duly authorized to sign the same. And Justice Sill, in delivering the opinion, refers to the contrary holding in the case of Chapin v. Merrill, 4 Wend. 657, and says': “The court there correctly lay down the principle controlling this class of cases. When the promise is an original, absolute promise, it is not within the statute. Otherwise, if it is col lateral to the promise or undertaking of another;” but he •denies the correct application of the principle in that case. And the court expressly hold that it is not sufficient that the promise arise out of some new and original consideration of benefit or harm moving between the newly contracting parties, but that this new, original consideration spoken of must be such as to shift the actual indebtedness to the new promiser, so that he must be bound to pay the debt as his own, the ■original debtor standing to him in the relation of surety.
To the same effect are the cases of Carniele v. Crum, 5 Hill, 483; Farley v. Cleveland, 4 Cowen, 432, and Barker v. Bucklin, 2 Denio, 45.
*227 Several of the other states concur in the rule as now held in England and New York; while certain of the states seem to have followed the case of Thomas v. Cooke, and hold that such promises to indemnify do not fall within the statute. Such is the holding of the courts in the states of Maine, Georgia, and Kentucky; and there are also quite a number of cases in other states, also following the case of Thomas v. Cooke.
It has never, perhaps, been regarded as settled in this state, whether such promises of indemnity are to be regarded as falling within the statute or not. ' Independent, therefore, of the holding of other courts, let us recur to the contract set forth in the record before us, with reference to the true meaning of the statute as expressed by the language, and as most naturally to be understood by its reading.
Does the “ special promise to answer for the debt, default, or miscarriage of another person,” as expressed by the statute, seem, by a reasonable interpretation of its language, to embrace the undertaking set forth in the petition, as admitted by the first defense in the answer ?
The undertaking set forth in the petition, as qualified by the answer, was a verbal promise by the defendant to indemnify the plaintiff against any loss by becoming surety for McDonald as principal, in an undertaking by him executed in a replevin proceeding. The undertaking which the plaintiff avers he was to be indemnified for so becoming surety in, is to the effect (as provided in section 179 of the code of civil procedure), that the plaintiff, the principal, shall duly prosecute the action of replevin and pay all costs and damages which may be awarded against him in said undertaking. The averment in the petition, therefore, that the defendant promised to indemnify the plaintiff against the loss in so becoming surety, which he complains of having sustained, would certainly seem to be a promise to answer for the default of another, to-wit, the default of McDonald, the principal in said undertaking. For the very condition of the bond or undertaking, upon which the plaintiff so became surety, is such that the plaintiff could only become liable to pay anything by reason of signing the same as such surety, upon McDonald *228 making default in the payment of the costs and damages awarded against him, in such case. If, therefore, the promise be construed to mean that the plaintiff shall never become liable to pay anything upon the undertaking, then the promise was that McDonald should not make default by failing to pay, as principal, the cost and damage awarded against him. Again, if it be regarded as a promise to make good, by repayment, any'loss incurred as such surety for said McDonald, inasmuch as McDonald, as principal, was liable to pay the plaintiff any money collected of him as his surety immediately upon such payment or loss, the promise would only amount to an undertaking that if said McDonald should be in default of so remunerating the plaintiff as his surety, that the defendant would, in McDonald’s stead, answer for his said default by saving the plaintiff from such loss.
In either view of the case, therefore, the promise or undertaking set forth in the petition as the cause of action, is, in substance, an undertaking on the part of the defendant to-answer for the default of another — of McDonald — in the discharge of a duty adjudged against him to pay the cost and damages, for which, otherwise, the plaintiff, as his surety upon such replevin undertaking, would become liable; and also, that if he, the said McDonald, by neglect of such duty, should suffer the amount of said costs and damages to be collected from his said surety, that he would not be in default in repaying him the same. It is admitted by counsel that a verbal promise to indemnify, in such a case as the present, if to be regarded as an undertaking merely collateral to the existing liability of the third person to the promisee, the promise would seem to fall within-the statute ; but it is suggested to us that there is to be found a class of cases where the liability of such third person is a mere implied liability, growing out of the acceptance of the service, and which continues obligatory until the liability is discharged, or until released by the party performing the service; and.that in those cases, both the party making the promise to indemnify, and the party for whose benefit the service is performed, are each to be considered independently and originally liable to *229 the party so becoming surety, or rendering service at tbeir requests and undertakings so by them respectively made to him for his indemnity.
Again, it is insisted by counsel that the undertaking to indemnify in this case was made, before the liability of McDonald occurred, and that, therefore, the undertaking by the defendant could not properly be regarded as collateral to the liability of McDonald; and counsel for plaintiff insist that the case is very different from the common case of A. promising B. to see him paid for the goods he may sell and charge to C., in case C. should fail to pay for the same.
I confess I am quite unable to perceive that the argument is sound in either case.
In the first place, then, as to the principal, McDonald, not having himself incurred any liability at the time of the promise of indemnity being so made. It certainly can make no difference whether the principal, A., has already made a purchase from B., and incurred a debt for which C. asks B. to become the surety of A., and promises to indemnify him for so becoming surety; or whether A.’s purchase and indebtedness can only be made upon his obtaining such surety, and the debt is in fact contracted by the principal, and the promissory note signed by him, and by such surety, at his request, after the-promise of indemnity is so made to the surety. In either case the liability assumed by the surety is.only to the effect that the principal shall discharge his own duty, or pay his-own debt; and the principal is bound in law to prevent the-liability attaching to his surety; and, if the surety shall be-compelled to pay the debt or suffer any loss as his surety,, then the principal is in law bound to fully indemnify or remunerate him for the same. It is, therefore, evident that in-either case, the promise of indemnity by a third person- to the surety is only collateral to the legal liability of the principal to indemnify his own surety; and such third person by such promise to indemnify is in the relation of surety for the principal in regard to his, the principal’s, liability to indemnify such surety. Nor can there be any .difference in principle between a promise'to indemnify the vendor against loss by *230 credit to be given his vendee, and a promise to indemnify a surety of such vendee upon a promissory note given therefor. In each and all of those cases the principal is primarily liable as the debtor, and the promise of indemnity to his creditor or surety is only an undertaking collateral to the liability of such principal; and, if so, it must be regarded as a promise to answer for the debt, default, or miscarriage of another, to-wit, of such third person, the principal.
Independent, therefore, of the contrariety of opinions upon the subject already referred to, I confess the question would, to my mind, seem quite free from doubt; and the contract or promise, presented in the record before us, would seem obviously to fall within the statute. The language of the statute is clear and explicit. And whether we have respect to the language or the object, I think a reasonable effect can only be given to the statute by holding if to embrace every undertaking, or promise to another, to be answerable to him upon any contingency or condition for the debt, or damage done or to become due from a third person to such promisee, and thereby becoming surety for such third person to the promisee.
If, therefore, the third person, against whose debt, default or miscarriage the promise of indemnity is made, would himself be legally liable to pay the promisee such debt, or damage, the promise of indemnity is to be regarded as collateral to his liability as principal, and within the statute.
Tried by this rule, the promise of indemnity in this case is clearly within the statute. And, we think, the language and reason of the statute, as well as the weight of authorities, therefore, required the court of common pleas to regard the promise of indemnity inoperative, by reason of its not being in writing.
We perceive no error in the record, and the judgment of the court of common pleas must be affirmed..
Scott, C.J., and Peck, Gholson and Brinkerhoee, J J., concurred.