Horn *et al. v.* Bray *et al.*

———•——

HORN ET AL. *v.* BRAY ET AL.

PRACTICE.—*Bill of Exceptions.—Motion to Strike Out Pleading.*—Where a motion to strike out part of a pleading, setting out the words to be struck out, has been sustained, if the motion be embodied in a bill of exceptions, this will be sufficient to bring the words so struck out into the record, and the clerk, in making up the transcript, should copy the pleading as it was after the motion to strike out had been sustained; but if the clerk copy the parts struck out, this will not vitiate the record.

STATUTE OF FRAUDS.—*Agreement Between Sureties.*—Where a party who is surety for the maker of a note procures others to sign as sureties by promising to indemnify them and save them harmless, such promise is an original undertaking, not within the statute of frauds, and may be proved by parol.

From the Bartholomew Circuit Court.

*F. T. Hord,* for appellants.

*S. Stansifer,* for appellees.

BUSKIRK, J.—The appellants instituted separate actions in the court below, against the appellees, for contribution. These actions continued to be separate until they were at issue, when the court ordered their consolidation.

Bray made no defence in the court below, and the questions in this cause pertain to the liability of Lefever. The appellants' several complaints were in three paragraphs. The complaints are identical, except as to names and some minor matters, and a substantial statement of one complaint will be sufficient. The motions made and the rulings of the court were the same in each case, and a statement of one cause will cover the questions in all.

The complaint of George Horn avers, substantially, the following facts:

That on or about the 30th of December, 1868, said Samuel Bray became indebted to Mahlon Hays, in the sum of eight hundred dollars, and it became necessary for said Bray to make and execute to said Hays a promissory note for said money, with good security, and said Bray being insolvent and unable to obtain said security, and said Hays being unwilling to accept a note with said Bray and Lefever alone as security, the said Samuel L. Lefever, who is the father-in-law of said Bray, undertook to procure security on said note, and on or about the 20th of January, 1869, the said Lefever produced to this plaintiff a promissory note of said date of 30th December, 1868, payable to said Hays, for the said sum of money, in twelve months, with ten per cent. interest, without relief from valuation laws, a copy of which is filed herewith; that the said Bray and Lefever's names were signed to said note, "and then and there the said Lefever agreed to and with the plaintiff that if he (plaintiff) would become surety on said note and sign his name thereto as surety, he, the said Lefever, would indemnify the plaintiff from all loss, and hold him harmless on account thereof; that he would stand between plaintiff and all loss and harm; and in consideration thereof, and in view of and under said agreement, the plaintiff then and there signed said note as surety, and otherwise would not have signed the same." He avers that thereafter, to wit, on the —— day of March, 1870, the says Hays, having instituted a suit on said note, recovered a judgment thereon, in the Bartholomew Common Pleas Court, against said Bray, Lefever and this plaintiff and other parties to said note, to wit, J. G. Schwartzkopf, Michael Schuler and Christopher Seeger, for the sum of nine hundred and fifty dollars and ten cents, and fifteen dollars costs, a copy of which is filed herewith; that said Hays caused execution to issue on said judgment by the clerk of said court, and the same was duly placed in the hands of the sheriff of said county; and said Bray being insolvent, the plaintiff

was required to pay and did pay on said execution, issued on said judgment as aforesaid, the sum of two hundred and fifty-four dollars and fifty cents, which was one-fourth part of said judgment, interest and costs, and said Schwartzkopf, Seeger and Schuler paid the residue thereof, which was one-fourth part by each; that said Lefever and Bray paid no part thereof, and said Bray is wholly insolvent; that defendants have failed and refused to pay said indebtedness or any part thereof, although duly requested, and said indebtedness is due and unpaid; and plaintiff demands judgment.

The second paragraph of complaint proceeds for contribution on the theory that all were co-sureties for Bray.

The third paragraph of complaint is, substantially, as follows:

That on or about the 30th of December, 1868, said Samuel Bray became indebted to Mahlon Hays in the sum of eight hundred dollars, and it became necessary for said Bray to execute to said Hays a promissory note for said money, with good security; and said Bray being insolvent and unable to obtain security thereon, and the said Hays being unwilling to accept a note with said Bray and Lefever thereon alone as security, the said Lefever, who is the father-in-law of said Bray, undertook to procure said security on said note, and on or about the 20th of January, 1869, the said Lefever produced to this plaintiff a promissory note of said date of 30th December, 1868, a copy of which is herewith filed, payable to said Hays for said sum of money, in twelve months, with ten per cent. interest; that the names of said Bray and Lefever were then signed to said note. " And then and there the said Lefever requested this plaintiff to become surety for him and said Bray on said note, and then and there agreed with this plaintiff that if he (plaintiff) would become surety on said note and sign his name thereto as such surety, he, the said Lefever, would indemnify plaintiff against all loss, and hold him harmless on account thereof; that he would stand between plaintiff and all loss or harm; in consideration thereof, and in view of and under said request and agree-

ment, the plaintiff then and there signed said note as surety, as aforesaid, and otherwise he would not have signed said note." He charges and avers that thereafter, to wit, on the —— day of March, 1870, the said Hays having instituted a suit on said note, he recovered a judgment thereon in the Common Pleas Court of Bartholomew county, against said Bray, Lefever and plaintiff and the other sureties on said note, to wit, Christopher Seeger, Michael Schuler and George Schwartzkopf, for the sum of nine hundred and fifty dollars and ten cents, and fifteen dollars costs, a copy of which is filed herewith; and plaintiff was compelled to pay on said judgment the sum of two hundred and fifty-four dollars and fifty cents, which was one-fourth part thereof, and said Seeger, Schuler and Schwartzkopf paid the residue thereof, each one-fourth part; that said Lefever and Bray paid no part of said debt; that said Bray is insolvent; that defendants have failed and refused to pay said indebtedness or any part thereof, although requested, and said indebtedness is due and unpaid; and plaintiff demands judgment, etc.

The appellee Samuel L. Lefever moved the court to strike out of the first and third paragraphs of the complaint all of that part quoted above, for the reasons, first, that the words were immaterial, irrelevant and surplusage; second, that they constitute no part of a cause of action. The court sustained the motion, to which appellants excepted. The portions struck out are the same in the complaints of all the appellants.

The action of the court in sustaining the motion to strike out the portions indicated in the first and third paragraphs of the complaint is assigned for error.

It is insisted by counsel for appellee that the question is not properly in the record. He says:

"A bill of exceptions shows that a portion of the first cause of action, as originally filed, similar to that portion of said cause of action as it now appears in the record, and embraced in quotation marks above, was struck out by the

court below, as well as a like portion of the third cause of action.

"The bill of exceptions does not show how the second and third causes of action read when the motions were made, or how they read when they were sustained. When the motions were sustained, the portions of the complaint aimed at by the motions at once ceased to be a part of the complaint, and ceased to be a part of the record until properly restored by proper bill of exceptions. The clerk, in making up the record, had no right to insert in the complaint portions that had been struck out, and anything inserted by him in the complaint which was not in it as it stood, without amendment, after the motions were sustained, is no part of the complaint or record. It must be presumed that the clerk did not exceed his authority, and that he copied the complaint as it stood after the motions were sustained, and the portions indicated in the bill of exceptions had been struck out. The only legitimate way to bring the alleged errors before this court for review was to show by bill of exceptions, first, how the two paragraphs of the complaint read when the motions were made, and then this court could see, through the only proper medium, just what was done, and how what was done affected the balance of the complaint.

"The action of the court below in sustaining the motions was not a ground or reason for a new trial, and for the purposes of a review it comes before this court in the first instance, and it is insisted that it must come in a proper and legitimate manner."

We think the objection is not well taken. The motion of the appellee to strike out set out the words which he moved to have struck out. This motion is embodied in the bill of exceptions, which shows that the court sustained the motion and struck out the words inserted in said motion, and that the appellant then excepted to such ruling. This is shown in all of the cases. When the court sustained the motion and struck out the words indicated, they ceased to constitute

a part of the record, and had to be put into the record by a bill of exceptions, and this, we think, was properly done.

The clerk, in making up the transcript, has copied the complaints as they were before any portion was struck out. This was wrong. The complaints should have been copied as they were after the motion to strike out was sustained, and when the portion struck out is restored by a bill of exceptions, it is fully shown how the complaints stood originally, and how they stood after portions thereof had been struck out.

The mistake of the clerk in copying into the transcripts the parts which had been struck out will not vitiate the record. It does no harm. It is simply surplusage, for which the clerk should receive no fees.

It is very earnestly insisted by counsel for appellees, that the agreement set up in the portions of the complaints struck out was an undertaking on the part of Lefever to answer for the debt of Bray, and, it not being in writing, is within the statute of frauds, and hence cannot be enforced.

It is contended by counsel for appellants, that when one party, at the request of another, enters into a contract as his surety, the law implies a promise of indemnity, and that, as between the makers and the payees, the relation of the parties is fixed by the note itself; that, as to the payees, the makers are all principals and equally liable; that the rights and liabilities of the makers, amongst themselves, depend upon the contract between them, upon the relation each may sustain to the other and to the transaction; and that such contract may be created and proved by parol.

There is much conflict in the adjudged cases as to whether a contract for indemnity between sureties is within the statute of frauds. The earliest English case bearing upon the question is that of *Winckworth* v. *Mills*, 2 Esp. 484, decided at *nisi prius*, where it was held that where a person signed a note at the request of another upon a promise of indemnity, the promise was within the statute, as it was an agreement to answer for the debt and default of another. The next case

is that of *Thomas* v. *Cook*, 8 B. & C. 728, where it was held that a promise of indemnity was an original contract between the parties, and hence was not within the statute. But in the subsequent case of *Green* v. *Cresswell*, 10 A. & E. 453, in the same court, *Thomas* v. *Cook* was overruled, and the opposite rule was announced. We make the following extract from a note to the case of *Bessig* v. *Britton*, published in 2 Cent. Law Journal, 296, in reference to the two English cases last cited:

"Passing now to the law as it stands on the other side of the water, it is to be remarked that some of the English judges have, for some time, been casting doubts upon the case of *Green* v. *Cresswell*, 10 A. & E. 453; for in speaking of the same in *Batson* v. *King*, 4 H. & N. 739, POLLOCK, C. B., says: 'I do not think that the case itself was rightly decided.' Besides, a new distinction has been pointed out in the somewhat recent case of *Cripps* v. *Hartnoll*, 4 Best & S. 414, decided in the Exchequer Chamber, and reversing the judgment rendered in the same case in the Queen's Bench. 'But,' says the same learned baron, in referring to *Green* v. *Cresswell*, 'there is a great distinction between that case and the present. Here the bail was given in a criminal proceeding; and, where bail is given in such a proceeding, there is no contract on the part of the person bailed to indemnify the person who became bail for him. There is no debt, and with respect to the person who bails, there is hardly a duty; and it may very well be that the promise to indemnify the bail in a criminal matter should be considered purely as an indemnity, which it has been decided to be.' * * * * 'This view of the subject creates, I think, a broad distinction between the present case and *Green* v. *Cresswell*, which we are not called upon either to overrule, or to say that we entirely support.' WILLIAMS, J., in the same case, begins his opinion by saying: 'I ought to remark that I do not deem it at all necessary for us to say whether the case of *Green* v. *Cresswell* is good law or not, but I think there is a

distinction between the recognizance of bail in a civil suit and the recognizance given for the appearance of a defendant in a criminal proceeding.' The court rendered judgment for the plaintiff, holding in effect that the promise of the defendant, to indemify the plaintiff against whatever damage the latter might incur by becoming bail for a third person, was an original undertaking and not collateral, there being no implied promise upon the part of the person bailed to indemnify his bail in a criminal proceeding."

In Alabama and in North and South Carolina and Ohio, the rule 'laid down in *Green* v. *Cresswell, supra,* has been followed. *Brown* v. *Adams,* 1 Stew. 51; *Draughan* v. *Bunting,* 9 Ired. 10; *Simpson* v. *Nance,* 1 Speers, 4; *Martin* v. *Black's Ex'rs,* 20 Ala. 309; *Easter* v. *White,* 12 Ohio St. 219.

In the recent case of *Bessig* v. *Britton, supra,* the Supreme Court of Missouri followed the English rule as laid down in *Green* v. *Cresswell, supra.*

In *Chapin* v. *Merrill,* 4 Wend. 657, the case of *Thomas* v. *Cook, supra,* was followed. In *Kingsley* v. *Balcome,* 4 Barb. 131, *Green* v. *Cresswell* was followed. But in *Barry* v. *Ransom,* 12 N. Y. 462, *Mallory* v. *Gillett,* 21 N. Y. 412, and *Konitzky* v. *Meyer,* 49 N. Y. 571, it was held that where one party, at the request of another, enters into a contract as his surety, the law implies a promise of indemnity; and that an express promise to indemnify is an original undertaking, and need not be in writing. In *Mallory* v. *Gillett, supra,* the ruling in *Kingsley* v. *Balcome, supra,* is expressly disapproved of.

In Massachusetts, Pennsylvania, Iowa, Maine, New Hampshire, Vermont, Maryland, Georgia, Kentucky, Missouri and New Jersey, it has been uniformly held that a promise of indemnity is an original undertaking, and not within the statute of frauds. *Taylor* v. *Savage,* 12 Mass. 98; *Aldrich* v. *Ames,* 9 Gray, 76; *Harris* v. *Brooks,* 21 Pick. 195; *Chapin* v. *Lapham,* 20 Pick. 467; *Blake* v. *Cole,* 22 Pick. 97; *Hendrick* v. *Whittemore,* 105 Mass. 23; *Smith* v. *Sayward,* 5 Greenl. 504; *Holmes* v. *Knights,* 10 N. H. 175; *Cutter* v.

*Emery*, 37 N. H. 567; *Whitehouse* v. *Hanson*, 42 N. H. 9; *Hodges* v. *Hall*, 29 Vt. 209; *Keith* v. *Goodwin*, 31 Vt. 268; *Adams* v. *Flanagan*, 36 Vt. 400; *Byers* v. *McClanahan*, 6 Gill & J. 250; *Jones* v. *Shorter*, 1 Kelly, 294; *Dunn* v. *West*, 5 B. Mon. 376; *Lucas* v. *Chamberlain*, 8 B. Mon. 276; *Jones* v. *Letcher*, 13 B. Mon. 363; *Melms* v. *Werdehoff*, 14 Wis. 18; *Apgar's Adm'rs* v. *Hiler*, 4 Zab. 812; *March* v. *Consolidation Bank*, 48 Penn. St. 510; *Kelly* v. *Gillespie*, 12 Iowa, 55.

We next inquire what has been and is now the rule of decision in this State.   In *Brush* v. *Carpenter*, 6 Ind. 78, it was held that an oral promise by one, at whose request another had become replevin bail for a third party, to indemnify such person from loss, was a promise to answer for the debt or default of another, and was within the statute of frauds.   The ruling was based upon *Nelson* v. *Boynton*, 3 Met. (Mass.) 396, *Kingsley* v. *Balcome*, 4 Barb. 131, and *Green* v. *Cresswell*, 10 A. & E. 453.   The case of *Nelson* v. *Boynton*, *supra*, though closely connected with the doctrine underlying the present case, belongs to another class of cases which has arisen under the statute of frauds.   There it was held that a promise to pay the note of a third person which is in suit, and is secured by an attachment of his property, in consideration of the holder's discontinuing the suit thereon, is within the statute of frauds, and is not valid, unless it be in writing.   The case of *Kingsley* v. *Balcome*, *supra*, has heretofore been explained and shown to have been virtually overruled by the Court of Appeals in that state.   It has also been shown that very serious doubts have recently been expressed, in the highest courts in England, as to the correctness of the ruling in *Green* v. *Cresswell*, *supra*.   The ruling in *Brush* v. *Carpenter* is against the current of American adjudications, and has been, in effect, though not expressly, overruled by the subsequent decisions in this State.   It is settled by repeated decisions of this court, that sureties may make any contract they please as between themselves.   One surety may thus be exempt from all liability to contribute.   Such

a contract may be implied from the nature of the transaction, and such extrinsic facts and circumstances as tend to show such to have been the intention of the parties; as, if one surety enters into the original contract at the request of the others, there might as to him be an implied waiver of the right to contribution, and, if compelled to pay the debt, he could recover the whole amount from the other sureties. Such an agreement, whether express or implied, may be shown by parol evidence.

*Lacy* v. *Lofton,* 26 Ind. 324; *Bowser* v. *Rendell,* 31 Ind. 128; *Bagott* v. *Mullen,* 32 Ind. 332; *Houston* v. *Bruner,* 39 Ind. 376; *Core* v. *Wilson,* 40 Ind. 204; *Alley* v. *Gavin,* 40 Ind. 446; *Schooley* v. *Fletcher,* 45 Ind. 86; *Schulz* v. *Klenk,* 49 Ind. 212; *Nesbit* v. *Knowlton, ante,* p. 352.

The distinction between original and collateral undertakings has been drawn with great clearness and force in several well-considered decisions rendered by the Supreme Court of the United States, which has manifested a strong inclination not to extend the operation of the statute of frauds, so as to embrace original and distinct promises made by different persons, at the same time, upon the same general consideration. *D'Wolf* v. *Rabaud,* 1 Peters, 476; *Townsley* v. *Sumrall,* 2 Peters, 170; *Emerson* v. *Slater,* 22 How. 28.

We are very clearly of opinion that the promise of indemnify set up in the portions of the complaint struck out was an original undertaking, and not within the statute of frauds. The appellants signed the note at the request of the appellee Lefever, upon his promise to indemnify them, and we think the promise need not be in writing, but may be proved by parol. It results that the court erred in sustaining the motion to strike out.

The judgment is reversed, with costs; and the cause is remanded, with directions to the court below to overrule the motion to strike out, and for further proceedings in accordance with this opinion.