## PETER BOYER v. NATHANIEL SOULES.

| 105 | 31 |
| 127 | 167 |

*Statute of frauds—Promise to pay debt of another—Agreement to indemnify co-surety—Interest of promisor—Evidence— Settlement—Duress—Appeal—Waiver of objections.*

1. The verbal promise of a mortgagee to indemnify a third party from loss if he will become co-surety with the mortgagee in a bond given by the mortgagor on the replevin by him of the mortgaged property from attaching creditors of the vendor

of the mortgagor, who attack the sale and mortgage as fraudulent, is an original undertaking, and not within the statue of frauds.

2. An objection that there was no evidence warranting the submission to the jury of a particular claim will not be considered where the record does not purport to contain all of the evidence on that subject.

3. Where a defendant, who has introduced in his defense the receipt of the plaintiff showing a settlement of the claim sued upon, requests the court to instruct the jury that, unless they find that the settlement was procured by duress, their verdict should be in his favor, it will be presumed on appeal that there was sufficient evidence to warrant the submission of the question of duress to the jury.

4. The purchaser of a stock of goods mortgaged the goods, after which they were attached by creditors of his vendor, and he replevied them from the creditors. The mortgagee induced another party to become co-surety with himself in the replevin bond by promising to indemnify him from loss in doing so. Judgment passed for the defendants in the replevin suit, and also in their favor in a suit brought upon the replevin bond. In a suit brought against the mortgagee by his co-surety to recover the money by him paid on the latter judgment, the court admitted in evidence in the plaintiff's favor the files and records in the attachment suit. And it is held that it was a case in which the broadest latitude of investigation was permissible under the claim of the plaintiff that the replevin suit was in fact for the benefit of the defendant, and that the court did not err in receiving said evidence.

Error to Eaton. (Smith, J.) Argued February 15, 1895. Decided April 16, 1895.

*Assumpsit.* Defendant brings error. Affirmed. The facts are stated in the opinion.

*Garry C. Fox* and *Vernon H. Smith,* for appellant.

*James M. Powers* and *Lyman H. McCall,* for plaintiff.

Long, J. Plaintiff's claim is that about the 1st of July, 1886, David E. Hollenbeck and wife were engaged in the mercantile business in Eaton county, under the name of D. E. Hollenbeck & Co. This firm sold out its

entire stock of goods to William M. Crane. The defendant, Soules, assisted Crane in making the purchase by loaning him money to the amount of $3,000, taking Crane's note therefor, and a chattel mortgage on the entire stock of goods as security for the amount. At the time of the sale of the goods to Crane, the firm of D. E. Hollenbeck & Co. was indebted to Allan Shelden & Co., of Detroit, in the sum of $4,000, as well as in large sums to other creditors. On July 17, 1886, Allan Shelden & Co. sued out a writ of attachment against D. E. Hollenbeck & Co., and the sheriff of Eaton county levied upon the entire stock in the hands of Crane, it being claimed that the sale to Crane and the mortgage to Soules were fraudulent and void as to creditors. The goods were inventoried at the sum of $4,685.03. Crane and Soules desired to replevin them, and on July 29 a writ of replevin was taken out by Crane, and the goods were seized by the coroner and turned over to Crane on July 30, 1886. Defendant, Soules, signed this replevin bond with Crane. Crane then came to plaintiff, Boyer, to sign the bond as one of the sureties, which he refused to do, and thereafter Soules came to him and represented that he knew all about the Crane affair, and that he (Soules) was secured for the whole matter, and, if he (Boyer, the plaintiff here) would sign the bond with him (Soules), he "should never have to pay a copper on the bond, and he [Soules] would pay any liability that might arise on it." Upon this assurance the plaintiff signed the bond, which was given for the sum of $9,500. The replevin suit was tried, resulting in a verdict and judgment in favor of the defendant in that suit, who waived return of the property, and a money judgment was entered against Crane for $4,685.03 and costs of $547.10. Execution was issued thereon against Crane, and returned unsatisfied, and suit was then brought on the bond, and judgment rendered against Crane and the sureties, the parties here, for $5,323.27 and costs of

$26.70. Execution was issued on this judgment. Crane was insolvent, and Soules had disposed of all his property before the execution issued. The sheriff levied the execution upon the farm of Boyer, and threatened to sell the farm unless the amount was paid, with costs. To save his farm, Boyer raised one-half of the money due on the execution. He did this because Soules refused to pay any amount whatever unless the plaintiff would pay one-half and give him (Soules) a receipt in full for all claims against him. This Boyer at first refused to do, when the attorney of Soules stated to him that no money would be paid by Soules if the receipt was not signed. The sheriff then stated to Boyer, in the presence of the attorney of Soules, that if nothing was going to be settled he should collect the whole amount of Boyer. Boyer paid one-half of the amount and Soules paid the other half. This suit is brought to recover from Soules the half paid by Boyer. Testimony was given on the trial on the part of the plaintiff tending to support his claim.

There is no dispute but that the bond was signed by the plaintiff at the request of Soules, and under his promise to save plaintiff harmless, and upon which promise he relied. It is not contended, either, but that at the time the plaintiff signed the bond Soules had a chattel mortgage upon the property replevied, and was desirous to aid Crane in getting possession of the stock to protect his mortgage interest. It is contended, however, that the promise of Soules was a collateral one, and made solely for the benefit of Crane, and therefore within the statute of frauds. The evidence shows conclusively that at the time this agreement was made Soules assured the plaintiff that he had security enough to pay the whole thing; and it also appears as conclusively that at that time Soules actually had a chattel mortgage on the goods to the amount of over one-half their value. It is apparent, therefore, that if Crane failed to hold the goods under his purchase from Hollenbeck & Co. the Soules mortgage would be worthless.

But, aside from the consideration of the security which Soules had, the promise was not a collateral one, and therefore not within the statute of frauds. It was an original undertaking to save the plaintiff harmless. A promise by one person to indemnify another for becoming a guarantor for a third is not within the statute of frauds. Such promise need not be in writing, and the assumption of the responsibility is a sufficient consideration for the promise. *Chapin v. Merrill*, 4 Wend. 657. It is settled that if B. agrees with C. that, if he will execute an instrument as cosecurity for A., he (B.) will indemnify him from loss, such agreement, in a suit by B. against C. for contribution, will be enforced and held valid. *Barry v. Ransom*, 12 N. Y. 462; *Mallory v. Gillett*, 21 Id. 412; *Taylor v. Savage*, 12 Mass. 102; Story, Eq. Jur. § 498; *Cutter v. Emery*, 37 N. H. 567; *Ross v. Espy*, 66 Penn. St. 481; *Creswell v. Wood*, 10 Adol. & El. 460; *Fennell v. Mulcahy*, 8 Ir. Law R. 444. The statute enacts that "every special promise to answer for the debt, default, or misdoings of another person" shall be void unless actually signed, etc. The undertaking in the present case was not to pay a debt of Crane's, but, if plaintiff would sign the bond or undertaking with Crane, Soules would save him harmless if plaintiff was called upon to pay anything thereunder. Such a case is fully discussed in *Wildes v. Dudlow*, 11 Moak, Eng. Rep. 788, decided in 1874; and Sir R. Malins, V. C., there remarks: "If one man could induce another to alter his line of conduct in that way, and then meet him with the statute of frauds, that statute, instead of being a protection against fraud, would be the direct means of fraud;" citing *Thomas v. Cook*, 8 Barn. & C. 728, where the case is fully discussed by Justices Bayley and Parke.

The present case need not, however, rest solely upon the naked promise of the defendant to save the plaintiff harmless. Here it is proved without contradiction that the defendant had an interest in the property replevied. He had a mortgage upon it for more than half its value,

and assured the plaintiff that he had ample security in his hands to protect him. Relying upon this, the plaintiff signed the bond. The case in this view falls within the rule of *Calkins v. Chandler*, 36 Mich. 325, which follows the rule of *Nelson v. Boynton*, 3 Metc. 396, which is that "cases are not considered as coming within the statute when the party promising has for his object a benefit which he did not before enjoy, accruing immediately to himself." This rule was followed in *Bice v. Opera-House Building Co.*, 96 Mich. 24.

It is contended, however, that by the giving of the receipt the plaintiff settled any cause of action which he might have had against the defendant. The receipt is as follows, after entitling the cause:

"Whereas, judgment was heretofore rendered in said cause, costs taxed, which in all at this time amounted to the sum of $5,460.26, and for the collection of which amount execution had been issued and levy made upon the property (real estate) of the above-named defendants, Nathaniel Soules and Peter Boyer, and each of said last parties having paid his just proportion of said amount, viz., $2,730.13, the said Crane being irresponsible, it is hereby agreed on the part of said Boyer that, said Soules having paid his just proportion of judgment, costs, and expenses in said cause, that the said Boyer has no claim whatever against said Soules by reason of the signing of the bond upon which said above suit was brought, or in any matter or thing connected therewith; and this is considered a receipt in full for all claims and demands which I may have against said Soules at this date."

While the receipt recites that the property of both had been levied upon, it appears that no property of Soules was actually levied upon. The levy was made upon some real estate that once stood in his name, but which he had conveyed before the levy was made thereon. The plaintiff contended that he gave the receipt under duress, and that question was left to the jury, who found in accordance with plaintiff's contention. Defendant

contends here that there was no evidence in the case which warranted the submission of that question to the jury; but, as the record does not purport to contain all the evidence on that subject, we cannot say that there was no evidence to warrant the charge. It is evident, however, that on the trial in the court below the defendant did not so contend, for he asked the court to charge the jury upon that very question as follows:

"A receipt containing an agreement of settlement between the parties of the subject-matter of this suit has been put in evidence by the defendant. In the absence of fraud in procuring such settlement, or duress or undue influence, such settlement would be binding upon the parties, and is a complete bar to this action; and if you find that no fraud or duress or undue influence was used by Soules, or his agent or attorney, in procuring such settlement, then your verdict should be for the defendant."

This request was given by the court, and the presumption is that there was sufficient evidence to warrant the submission of that question to the jury.

It is further contended that the court erred in permitting the plaintiff to put in evidence the files and records in *Shelden & Co. v. D. E. Hollenbeck & Co.* We think it was proper to permit the plaintiff to go into the whole case for the purpose of showing the interest which the defendant had in the goods, and in the cases that were brought leading up to the giving of the bond in question. It was a case in which the broadest latitude of investigation was permissible under the claim of the plaintiff that the replevin suit was in fact for the benefit of the defendant in the present case.

We have examined the other claims made, but find no error, and no further questions which require discussion.

As we think no error was committed which was prejudicial to the defendant, the judgment must be affirmed.

McGRATH, C. J., GRANT and MONTGOMERY, JJ., concurred. HOOKER, J., took no part in the decision.