## ROSE v. WOLLENBERG.

(——L. R. A.——, 44 Pac. 382.)

Sureties—Parol Agreement as to Relative Liability—Statute of Frauds.—A contract between cosureties fixing the proportion and extent of their several or correlative liability as between themselves is not within the statute of frauds.

From Douglas: J. C. Fullerton, Judge.

The facts out of which this case arose are in effect as follows: On June 21, 1892, the plaintiff and defendant became sureties upon the official bond of one V. L. Arrington who had theretofore been elected treasurer of Douglas County. Arrington defaulted, and on December 23, 1893, judgment was taken against him and his bondsmen, which was satisfied by plaintiff and defendant each paying one half or $11,828.65. As touching the contractual relation of the parties with each other, the plaintiff alleges "That at the time plaintiff and defendant so became such sureties on said official bond of V. L. Arrington, it was agreed and stipulated by and between plaintiff and defendant that their liabilities, as between themselves as sureties on said official bond of V. L. Arrington, should not be joint or equal, but that the liability of plaintiff should

be a one third proportion and that of the defendant should be a two thirds proportion of any liability that might occur under said bond to said sureties." Plaintiff by this action seeks to recover the difference between one third and one half of the liability incurred, amounting to $4,003.55. The following is a copy of the bond, omitting matter of inducement and formal parts:

"We, V. L. Arrington as principal, and Aaron Rose and Hyman Wollenberg, hereby undertake, that if the said V. L. Arrington shall not faithfully pay over, according to law, all moneys that may come into his hands by virtue of said office, that we, or either of us, will pay the State of Oregon the sum of thirty thousand ($30,000) dollars.

V. L. Arrington, [Seal.]

$10,000   Aaron Rose,      [Seal.]

H. Wollenberg, [Seal.]

The sureties joined in the justification, the plaintiff justifying for ten thousand and the defendant for twenty thousand dollars.

The allegation above quoted having been put in issue by the answer, a jury was called, whereupon the plaintiff, after putting the bond in evidence, testified as a witness in his own behalf, in substance, that Arrington, Wollenberg, and the county clerk, G. A. Taylor, were present when he signed the bond, and that the figures "$10,000.00" were placed in front of his name at the time he signed, and continuing said: "I was to assume $10,000.00 and Wollenberg $20,000.00, this is the way I understood it." And upon cross-examination further said: "All the contract I suppose I

had was when I signed for one third and he for two thirds. I supposed I had to pay one third and him two thirds, that is all the contract. * * * I signed for security for Mr. Arrington, and at the same time I said distinctly that I would not go for more than one third, and Mr. Wollenberg said he would go for $20,000." Arrington testified as follows: "Two or three days before the signing of the bond, several days before, I went to Marks' store there, and asked him if he was willing to sign as my surety again, and I went into the bank and asked S. C. Flint if he was willing to go on my bond. Mr. Wollenberg was there, and he expressed himself there voluntarily; says, 'I am willing, and will go on your bond.' He asked me who else were going on. I told him Aaron Rose and Asher Marks. * * * I asked them all to meet me there (at the clerk's office) on the twenty-first of June, so as to put the jurat on the bond. I asked Rose and Wollenberg to meet me there on that morning to justify on the bond. When this matter in regard to the signing occurred Mr. Marks was not there. I went into my room out of the clerk's office for my hat, to go and get Mr. Marks to complete the business. When I came out of the room Mr. Wollenberg met me in the corridor, and said 'You need not go for Mr. Marks, I will take the rest of the bond.'" The witness further stated, in effect, that after the defalcation Wollenberg admitted his liability on the bond to the extent of $20,000, and, upon cross-examination, that at the signing and in the presence of Taylor, Wollenberg and himself, "Mr. Rose said he would be liable for one third of the bond, and instructed Mr. Taylor to prefix

the figures $10,000 as he would sign for one third of the bond." G. A. Taylor, the clerk, gave his version of the execution of the bond as follows: "As near as I can remember the matter, these parties came into the office and wished to fix the bond out before me, the justification, and they told me—I do not know which one it was told me—how they wanted it fixed, and how it should read, and according to the instructions received from the parties at that time, I filled it out, and fixed it in the amount of $10,000 and $20,000, and put the figures $10,000 in front of Mr. Rose's name, at the request of the parties, I do not know which one told me to do that." This is in substance all the testimony offered; and, the plaintiff having rested, the defendant moved for nonsuit, which was granted by the court, and judgment entered against plaintiff for costs from which he appeals.

Reversed.

For appellant there was a brief over the name of *William W. Cardwell,* with an oral argument by *Mr. Rufus Mallory* and *Mr. Cardwell.*

For respondent there was a brief and an oral argument by *Mr. J. W. Hamilton.*

Mr. Justice Wolverton, after making the foregoing statement, delivered the opinion of the court.

The question presented by this record is, whether the alleged agreement between the plaintiff and defendant "that the liability of plaintiff should be a one third proportion and that of the defendant should be

a two thirds proportion of any liability that might occur under said bond to said sureties," not having been entered into in writing, is within the statute of frauds and perjuries, and therefore void; and, if not, another question arises, and that is whether the evidence presents a *prima facie* case sufficient to go to the jury.   It is settled by *Durbin* v. *Kuney*, 19 Or. 71 (23 Pac. 661), that, as between cosureties, where one of their number has paid more than his proportion of the common liability, no special agreement having been entered into between themselves, the law raises an obligation upon the part of the other cosureties to repay him the excess which he has been compelled to pay, upon the principle that where there is a common liability equality of burden is equity.   Formerly equity alone entertained jurisdiction to compel contribution, but latterly courts of law, having borrowed the jurisdiction, are competent, in most cases, to administer relief.   It is said in the case cited " that the doctrine of contribution does not depend upon contract, but is bottomed and founded upon principles of natural justice.   The contract upon which they are codebtors or sureties only expresses the relation between them and their creditor, and is entirely distinct from the right of contribution, which exists between themselves."   While the law, upon principles of natural justice, raises the obligation of equitable contribution among cosureties, it by no means follows that they are inhibited from fixing or determining their relative liabilities by express contract or agreement among themselves.   Indeed, the right to enter into any agree-

ment in respect of such liability as their discretion or judgment may dictate is not questioned. The important question is whether such contracts or agreements are within the statute of frauds, requiring all contracts for the debt, default, or miscarriage of another to be contained in some note or memoranda in writing, expressing the consideration, signed by the party to be charged: (Hill's Ann. Laws, § 785). It is well settled that the true relations existing between joint, or joint and several, promisors or obligors upon a note or bond, or other instrument of writing, can be shown by parol, whether principals or sureties. The writing is paramount, and fixes liability as it pertains to the payee or obligee, but, as between the makers or obligors, their correlative undertakings, whether in the capacity of principals or sureties, may be otherwise established. The principal who has obtained the benefit of the contract or suffered the forfeiture of his bond or obligation is always bound to indemnify his surety who has sustained loss upon his account, and he cannot interpose the statute of frauds to prevent it. But when we go a step farther, to the proposition which involves the undertaking of one surety to indemnify another, in whole or in part, against liability upon their principal's obligation, or, as is alleged in the case at bar, an agreement between themselves fixing upon a different ratio of liability than that which the law raises or implies, we find much contrariety of opinion and authority as respects the enforcement of such undertaking or agreement where it rests in parol.

The earliest case to which our attention has been called is that of *Thomas* v. *Cook*, 8 B. & C. 727. It

there appeared that one person requested another to
become surety with him for a third party under prom-
ise of indemnity against payment. In deciding it
Bayley, J., says: "Here the bond was given to Morris
as the creditor, but the promise in question was not
made to him. A promise to him would have been
to answer for the default of the debtor. But, it be-
ing necessary for W. Cook, since deceased, to find
sureties, the defendant applied to the plaintiff to join
him in the bond and bill of exchange, and undertook
to save him harmless. A promise to indemnify does
not, as it appears to me, fall within either the words
or the policy of the statute of frauds." This was in
1828. In 1839, *Green* v. *Cresswell,* 10 Adol. & E. 453,
was decided by the same court, which may be taken
to have overruled *Thomas* v. *Cook,* at least the reason-
ing of that case was severely criticised. The case was
this: The plaintiff, at the request of defendant and
under his promise to indemnify and save him harm-
less, became surety for one Hadley upon a bail bond
in a civil action. The defendant did not join as co-
surety. The undertaking was held to be within the
statute. The court distinguishes *Thomas* v. *Cook,* by
reason of the fact that both the plaintiff and defendant
therein joined as cosureties. Subsequent authorities
have assigned as a reason for the distinction that,
where the defendant is cosurety, he is, as such, and
without any special promise, liable already to con-
tribute, and that his special promise to pay the whole
may be regarded as but a matter of regulation of con-
tribution between the two sureties. In Browne on
Statute of Frauds (4th ed.), § 161*a,* it is argued that

the reason is not well assigned because,— First, that, though called 'regulation' or 'contribution,' it is really a promise to pay what he was not otherwise liable to pay for a third party; and, secondly, that he was never liable to contribute at all except by force of the relation of cosuretyship into which he entered, and owed no antecedent debt of his own." These cases gave rise to the subsequent divergence of opinion on the subject treated therein, and the decisions of courts of different jurisdictions are to be largely distinguished in that they have followed the one or the other of these early authorities. *Reader* v. *Kingham,* 13 C. B. (N. S.) 344, a later English case, decided in 1862, and arising out of a similar state of facts, although not overruling is in direct conflict with *Green* v. *Cresswell.* In *Cripps* v. *Hartnoll,* 4 Best & S. (Q. B.) 414, the court would not say that it could lend its support to *Green* v. *Cresswell.* But in a much later case, decided in 1874, *Wildes* v. *Dudlow,* L. R. 19 Eq. 198, *Geeen* v. *Cresswell* was expressly overruled, and *Thomas* v. *Cook,* approved and followed. In that case the son, at the request of his father, became surety for a third party, the father not signing as a cosurety; and it was held to be an original contract for indemnity, and not within the statute of frauds. By a very recent case (*Guild* v. *Conrad,* 63 Q. B. Div. 721, decided in 1894), it was held that *Green* v. *Cresswell,* was no longer binding, but that *Thomas* v. *Cook,* was good law. So that it may be said that in England the doctrines has been finally settled in harmony with the latter case.

The authorities among the states of this country

are much divided upon the subject.    Among the earlier
cases to be found is *Chapin* v. *Merrill,* 4 Wend. 657,
decided in 1830.    The facts stated are that plaintiff, at
the request and upon the solicitation of the defendant,
and under a promise of indemnity, entered into an un-
dertaking under seal with one Asa Ransom, by which
they covenanted with a mercantile firm that if they
would supply one Asa Ransom, Jr., with goods, they,
the cosureties, would pay such an amount unpaid by
Ransom, Jr., not exceeding $2,000, as should be due
the firm.    The defendant had no interest in the goods.
MARCY, J., in deciding the case, says: "The contract
on which this action is brought is not, in my opinion,
within the statute of frauds.    The action is brought
on the parol undertaking of the defendant to save the
plaintiff harmless.    *   *   *    The promise in this case
was original, and not a collateral undertaking; but
had it a sufficient consideration?    It is not disclosed
that the defendant received any benefit from what was
done by the plaintiff, nor is it necessary, as I conceive,
that he should to make him liable.    In *Tomlinson* v.
*Gill,* 1 Amb. 330, and *Read* v. *Nash,* 1 Wils. 305, it does
not appear that the defendant did or could derive any
benefit from their undertakings, yet they were held
liable on them.    The consideration was the harm to
the plaintiffs.    In this case the consideration was the
assumption of the plaintiff of a responsibility on which
he was obliged to pay about $600.    This is an abun-
dant consideration for the undertaking on which this
action is brought."    This case was subsequently over-
ruled by the Supreme Court of New York (*Kingsley* v.
*Balcome,* 4 Barb. 131). which latter was a case wherein

plaintiff became bail upon arrest at the request of defendant, who promised to indemnify and save him harmless. The opinion is based to some extent upon the express authority of *Green* v. *Cresswell.* In a later case *(Barry* v. *Ransom,* 12 N. Y. 462), decided in 1855, it was held that a surety who became such upon a tax collector's bond at the request of his cosurety, and under promise of indemnity could not be required to contribute, the cosurety having paid the whole loss. DENIO, J., says: "The cases where the person making the promise was himself bound for the default of the third person are uniform in holding the contract to be unaffected by the statute." Thus distinguishing *Green* v. *Cresswell* and *Kingsley* v. *Balcome,* and following *Thomas* v. *Cook,* the court concludes: "I am of opinion that where a person is about to become bound by writing to answer for the default of a third party, and he procures another to be bound with him in the same obligation, by promising to indemnify him, this is an original promise, and not within this branch of the statute of frauds." The same result was reached in a Massachusetts case *(Blake* v. *Cole,* 22 Pick. 97) based upon a similar state of facts. In a later case from the same state *(Aldrich* v. *Ames,* 9 Gray 77) in which the facts are not stated, except that the promise was made for a valuable consideration, SHAW, J., says: "The theory of the statute of frauds is this: That when a third party promises the creditor to pay him a debt due to him from a person named, the effect of such a promise is to become a surety or guarantor only, and shall be manifested by written evidence. The promise in such case is to the creditor not to the debtor. For

instance, if A, a debtor, owes a debt to B, and C prom-
ises B, the creditor, to pay it, that is a promise to the
creditor to pay the debt of A.   But in the same case
should C, on good consideration, promise A, the debtor,
to pay the debt of B and indemnify A from the pay-
ment, although one of the results is to pay the debt of
B, yet it is not a promise to the creditor to pay the
debt of another, but a promise to the debtor to pay his
debt.   This rule appears to us to be well settled as the
true construction of the statute." These earlier cases
are sufficient to illustrate the distinguishing features
between the prevailing antagonistic opinions in this
country.

The leading and perhaps the best considered cases
to be found which follow in the wake of *Green* v. *Cress-
well* and *Kingsley* v. *Balcome*, are *Easter* v. *White*, 12
Ohio St. 219; *Bissig* v. *Britton*, 59 Mo. 204 (21 Am.
Rep. 379); *Macey* v. *Childress*, 2 Tenn. Ch. 438, and
*Nugent* v. *Wolfe*, 111 Pa. St. 471 (56 Am. Rep. 291).
The Ohio case was decided long prior to the English
case of *Wildes* v. *Dudlow*, while the Missouri case was
almost concurrent in time with it, but without knowl-
edge of its announcement and was not in any manner
controlled by it.   The other two cases cite it with dis-
approval.   The clearest illustration of the principle
maintained by these cases is to be found in *Nugent* v.
*Wolfe*.   The First National Bank of Ravenna, Ohio,
had obtained judgment against Powers and Company.
Nugent went security for Powers and Company, as he
alleges, at the request of Wolfe, accompanied with a
verbal undertaking or agreement to save Nugent
harmless in his undertaking for Powers and Company

with the bank. The court in deciding the case, says: "There is no testimony, nor was any offered, to show that defendant had any personal interest in the judgment on which bail was entered, or that he held property or funds that should have been applied to the payment thereof. So far as appears, it was the proper debt of Powers and Company, and the substance of defendant's agreement is that he would see that they paid it; and, if they failed to do so, he would pay it for them. It was literally a promise to answer for the default of Powers and Company. Plaintiff's liability as bail for stay was merely collateral to the debt in judgment, and had in contemplation nothing but the payment thereof to the bank."

The cases which are usually classed as following *Thomas* v. *Cook* and *Chapin* v. *Merrill* may be subdivided into three classes, in consideration of the grounds upon which each is apparently sustained. *First*—It is held that where the inducement for the promise of indemnity is a benefit to the promisor which he did not before or would not otherwise enjoy, as where he has a personal, immediate, and pecuniary interest in the principal transaction, and is therefore himself a party to be benefited by performance on the part of the promisee, the contract is not within the statute and may be supported by a verbal undertaking. In reality the undertaking is to pay a debt which is, in substance, the debt of the promisor: *Smith* v. *Delaney*, 64 Conn. 264 (42 Am. St. Rep. 181, 20 Atl. 496); *Davis* v. *Patrick*, 141 U. S. 479 (12 Sup. Ct. 58); *Reed* v. *Holcomb*, 31 Conn. 360; *Potter* v. *Brown*, 35 Mich. 274; *Hilliard* v. *White* (Tex. Civ. App.), 31

S. W. 553; *Emerson* v. *Slater*, 63 U. S. (22 How.), 43.
The doctrine established by these authorities does not
seem to be at variance with *Green* v. *Cresswell* and
*Kingsley* v. *Balcome*.  See *Waterman* v. *Resseter*, 45 Ill.
App. 155–165.  It cannot be true, as has been inti-
mated, that a new and independent consideration,
moving from the promisor to the promisee, will sup-
port a verbal promise, for this does not meet the
statute, as the writing or memorandum which the
statute requires must itself be supported by a consid-
eration.  See *Mallory* v. *Gillett*, 21 N. Y. 412.  *Second* —
The promise of indemnity is not a contract with the
creditor to answer for the default or miscarriage of the
debtor, but is independent of the principal contract or
obligation, and constitutes an entirely distinct and sep-
arate undertaking, with which the creditor has noth-
ing to do, and which cannot avail him or redound to
his benefit in any manner.   In such a case the as-
sumption of the liability by plaintiff is itself a suffi-
cient consideration to support the promise, regardless
of any subservient interest of the promisor, or of the
fact of his becoming cosurety with the promisee, and
it need not be in writing: *Mills* v. *Brown*, 11 Iowa,
314; *Dunn* v. *West*, 5 B. Mon. 376; *Lucas* v. *Chamber-
lain*, 8 B. Mon. 276; *Holmes* v. *Knight*, 10 N. H. 175;
*Jones* v. *Bacon*, 72 Hun, 506 (25 N. Y. Supp. 212), same
case on appeal, 145 N. Y. 446 (4 N. E. 216); *George*
v. *Hoskins* (Ky.), 30 S. W. 406; *Shook* v. *Vanmater*,
22 Wis. 532; *Vogel* v. *Melms*, 31 Wis. 306 (11 Am.
Rep. 608); *Boyer* v. *Soules*, 105 Mich. 31 (62 N. W.
1000); *Minick* v. *Huff*, 41 Neb. 516 (59 N. W. 795);
*Tighe* v. *Morrison*, 116 N. Y. 270 (5 L. R. A. 617, 22 N.

E. 164); *Wildes* v. *Dudlow,* and *Chapin* v. *Merrill,*
4 Wend. 657. *Third*—Where the promisee, under
the promisor's agreement to indemnify and save
harmless, becomes jointly liable as cosurety with him
for the same obligor, such an agreement is held to be
an original undertaking, and not within the statute.
As sustaining this proposition, *Thomas* v. *Cook,* 8 B.
and C. 727, is directly in point. See also *Horn* v.
*Bray,* 51 Ind. 555 (19 Am. Rep. 742); *Apgar's Admin-
istrators* v. *Hiler,* 24 N. J. Law, 812; *Chapeze* v. *Young,*
87 Ky. 476 (9 S. W. 399); *Adams* v. *Flanagan,* 36 Vt.
400; *Baldwin* v. *Fleming,* 90 Ind. 177; *Houck* v. *Gra-
ham,* 123 Ind. 277 (24 N. E. 113); *Barry* v. *Ransom,* 12
N. Y. 462; *Jones* v. *Letcher,* 13 B. Mon. 363; *Oldham* v.
*Broom,* 28 Ohio St. 41 (43 Am. Rep. 419); Brandt on
Suretyship and Guaranty, § 226; *Mickley* v. *Stocksleger,*
10 Pa. Co. Ct. R. 345; *Blake* v. *Cole,* 22 Pick. 97.

It is within this latter class that the case at bar must
be grouped. The authorities have not concurred en-
tirely in the reasoning which is supposed to support
the doctrine upon which these cases proceed. Chan-
cellor Cooper in *Macey* v. *Childress,* 2 Tenn. Ch. 438,
says they "may be safely rested on the well estab-
lished doctrine that a surety may by parol limit the
extent of his liability as between him and the other
parties to the paper." *Mickley* v. *Stocksleger,* 10 Pa.
Co. Ct. Rep. 345, distinguishes *Nugent* v. *Wolfe,* 111
Pa. St. 471 (56 Am. Rep. 291), in that the latter
case "was in no way connected with the original cause
of action; he was not a party liable, and it did not ap-
pear that he had any personal interest in the judgment
on which the plaintiff was the only bail for the stay of

execution." Mr. Browne ventures a reason for which he declares that none other exists so satisfactory or consistent with the spirit of the statute. The reason is alike applicable to the second and third classes above enumerated. The troublesome element in the cases is that by the hypothesis there are or are to be two different persons concurrently liable to the plaintiff to do the same duty. He says: "The implied obligation of the third party exists only by force of and incidental to the special contract between the plaintiff and defendant," and "that the statute contemplates only obligations of the third party previously existing, or incurred contemporaneously with the defendant's special promise, or afterwards as the case may be, but always existing or to exist independently of any contract of guaranty between the plaintiff and defendant; an obligation which exists or may exist, whether any contract be made with the plaintiff and defendant or not; not an obligation which exists only as a legal incident of the contract which they have made." But, seek where you will for a plausible footing upon which to found the obligation so as not to come within the purview of the statute of frauds, the distinction taken in *Green* v. *Cresswell* of *Thomas* v. *Cook*, that the promisee became likewise bound upon the obligation with the promisor, as cosureties, and for this reason, if not also for the reason upon which the second class is supported,—that it is not an undertaking with the creditor,—the indemnity is not within the statute, whether adequate or not, has taken deep hold in the judicial mind, and the undoubted weight of authority in this country is grounded upon it. In-

deed, the doctrine is even regarded as settled. Mr. Throop, in his treatise on the Validity of Verbal Agreements, § 474, says: "As the result of the conflict of authority upon this question (speaking generally of contracts of indemnity against a surety's liability) nothing can be regarded as definitely settled, except, perhaps, that, where the promisor and the promisee are about to unite in an instrument as sureties for the third person, the promise to indemnify is not within the statute." If one cosurety can by a verbal undertaking indemnify another in whole against the obligation of the latter, without suffering the interdiction of the statute, he may also in part, as the greater includes the less; and thus it is that cosureties may by contract, agreement, or understanding between themselves, limit and fix the proportion and extent of their several or correlative liability, and it is competent to establish the agreement by parol. So we conclude that it was competent for the plaintiff and defendant to enter into such a contract or agreement as is set forth in plaintiff's complaint, and the fact that it is not in writing cannot be taken as an objection against its enforcement.

Now as to the question whether, in view of the evidence, the court erred in taking the case from the jury and sustaining the motion for nonsuit. Without intimating any opinion as to the weight and effect to be given to the testimony, that being a matter for the jury to determine, and without recapitulation here, let it suffice to say that we deem the evidence introduced competent and sufficient to go to the jury for their consideration whether or not there was such an agree-

ment entered into between the parties touching their correlative liabilities as plaintiff has alleged by his complaint: *Tippin* v. *Ward*, 5 Or. 453; *Brown* v. *Oregon Lumber Company*, 24 Or. 317 (33 Pac. 557); *Vanbebber* v. *Plunkett*, 26 Or. 562 (27 L. R. A. 811, 38 Pac. 708); *Baldwin* v. *Fleming*, 90 Ind. 177. Let an order be entered remanding the case for a new trial.

REVERSED.