Argued January 25, affirmed February 8, 1921.

## BEAN *v.* TRIPP.

(195 Pac. 355.)

**Frauds, Statute of—Promise to Pay Employees of Another That Promisors Might Receive Timber Manufactured Held not Within Statute.**

1.   Defendants' agreement, in consideration of sawmill employees
foregoing enforcement of their claims for services performed and
stumpage furnished, and continuance of their assistance in the busi-
ness, in order that defendants might receive ties manufactured from
the logs which the employees procured, that they would pay for
such services, as evidenced by orders fixing the amount drawn by
the mill owners on defendants in favor of the claimant employees,
was not within the statute, being a promise to pay their own debt.

**Trial—Instruction in Action on Assigned Orders on Defendants not Erroneous in View of Charge as Whole.**

2.   In an action by an assignee on orders given by a sawmill to
its employees on defendants and accepted by defendants, instruc-
tion that, whatever defendants' oral intention may have been, if
they induced plaintiff's assignors to believe they were to be paid
from the first proceeds of the sale of certain ties, and that the
claim of plaintiff's assignors should be paid before defendants, and
the assignors refrained from asserting their liens, defendants would
be bound, *held*, in view of the charge as a whole, not erroneous.

**Trial—Circuit Court Properly Enforced Rules by Refusing Instruc-
tions Requested Too Late.**

3.   It was appropriate for the Circuit Court to enforce its rules
by refusing several instructions requested by defendants at a time
during the trial too late to conform to rule.

From Lane: GEORGE G. BINGHAM, Judge.

Department 2.

The complaint in this case is based upon seventeen
causes of action assigned to plaintiff for collection.

Upon the trial before the court and a jury a verdict was rendered in favor of ,plaintiff. From a judgment thereon defendants appeal.

It appears from the record that in September, 1918, the defendants, Tripp & Powell, and the firm of Allen & Wickstrom entered into a contract whereby the defendants were to loan to Allen & Wickstrom sums of money aggregating about $1,800 with which to purchase and equip a sawmill, the defendants taking, as security for the loans, a deed to 1,000 acres of land and a chattel mortgage on a team. Allen & Wickstrom were to sell the mill products to, or through the defendants. The contract provided that when the defendants were unable to move the ties on account of car shortage or other causes, they were to advance to Allen & Wickstrom, on the ties, $6.50 per 1,000 feet. The defendants were also to be repaid for the money loaned out of the proceeds of the ties at the rate of $2.50 per 1,000 feet.

It is asserted by plaintiff that there was no proof offered of a car shortage. The testimony produced purported that none of the provisions of this contract were known to the plaintiff or his assignors. Plaintiff's assignors were employed in, and in connection with, the mill, and in March and April, 1919, Allen & Wickstrom being behind in their payments to their help, the plaintiff's assignors made preparation to collect their claims by filing liens on the ties and lumber for their labor, stumpage, etc. One lien was filed by another claimant. Allen & Wickstrom and defendants, Tripp & Powell, arranged with the employees that orders would be given by Allen & Wickstrom to the men, to be paid out of the proceeds of the sale of the ties. These orders were to be accepted by the defendants. The firm of Allen & Wickstrom executed seven-

teen orders in favor of plaintiff's assignors, upon the defendants, Tripp & Powell. The form of the orders was of the following tenor:

"April 2nd 1919.
"Tripp-Powell Lumber Co., Eugene, Oregon—
"Gentlemen:—
"Please pay Fred Easton the sum of $ *one hundred Seventy-three and twenty five one hundredths, 173 Dollars $25/100* out of our part of sale price of ties now on dock at Fall Creek at our mill when same are shipped, and deduct same from such sale price due us.

"Allen & Wickstrom."
"By A. E. Allen."

"Accepted.

"Tripp-Powell Lbr. Co."
"W. E. Powell."

"Countersigned 4/8/1919.

"Whitten Swafford."

Some of the orders given were accepted by the defendants in writing and the others orally. Defendants agreed to pay the same out of the proceeds of the sale of the ties.

The defendants claim that at the time of the issuance and acceptance of the several orders they had advanced to Allen & Wickstrom, pursuant to the contract between defendants and that firm, amounts in excess of the proceeds of the sale of the ties due to Allen & Wickstrom, which contract was set up in defendant's answer, and that their claims should be paid before the orders. The claimants knew there was some kind of a contract whereby the defendants were to receive and sell the ties. The defendants, in their evidence, admitted the acceptance of the orders, but undertook to qualify it by proof that they accepted them to be paid only out of the balance after their own claims were paid. The defendants, during the

course of the trial and here, contend that the words
contained in the orders, except the first one, "from
money to be due us thereon," meant that these orders
were to be paid from any balance remaining after
their claims had been satisfied.

Plaintiff contends that when the money was received
by the defendants it was due Allen & Wickstrom on
the ties, and that it was beside the question that it was
afterwards applied by defendants on their own claims.
The principal errors assigned, arise out of the ques-
tions thus presented.

The court instructed the jury on the theory pre-
sented by the complaint, then on the theory presented
by the answer, as follows:

"If you find from the evidence that the plaintiff's
assignors contemplated filing liens against the ties to
secure payment of the sums they claimed to be due to
them and to take such action as might be necessary to
secure a first lien to secure their claims, and that such
contemplated action was known to the defendants and
to Allen & Wickstrom, and that the defendants, in
order to prevent liens being filed upon such ties prom-
ised the assignors of the plaintiff that the defendants
would accept and pay orders given by Allen & Wick-
strom to the plaintiff's assignors for the amount of
their respective claims from the first proceeds of the
sale of such ties, and if you find that funds from the
sale of such ties to an amount sufficient to pay the
claims of plaintiff's assignors did come into the defend-
ants' hands, then your verdict should be in favor
of the plaintiff in such an amount as you may find
there was due from Allen & Wickstrom to plaintiff's
assignors, not exceeding the sum of $3,619.75.

"If you find from the evidence that at the time
plaintiff's assignors presented their orders to the de-
fendants, that the defendants informed them that the
defendants had advanced large sums of money
to Allen & Wickstrom to assist them in the purchase
of machinery for the mill, and advanced money to

assist in getting out of ties, and that the defendants would accept such orders and would pay on such orders whatever might be found to be coming to Allen & Wickstrom after defendants' advances were first paid, and if you find from the evidence that after such advances by the defendants were deducted from the fund derived from the sale of the ties, there was nothing coming to Allen & Wickstrom, then your verdict shall be for the defendants.''

No objection was taken by either party to these two instructions. Defendants requested the court to give several instructions to the jury, but the request was made too late to comply with the rules of the trial court, and for that reason was refused. At the close of the case the defendants interposed a motion for nonsuit, directed to each of the seventeen causes of action, on the ground of insufficiency of the testimony.                                      AFFIRMED.

For appellants there was a brief and an oral argument by *Mr. H. E. Slattery.*

For respondent there was a brief over the names of *Mr. J. S. Medley* and *Messrs. Williams & Bean,* with oral arguments by *Mr. J. M. Williams* and *Mr. Medley.*

BEAN, J.—The principal ground of defendants' contention is that the agreement to pay the men for cutting and transporting the logs and manufacturing the same is within the statute of frauds, and required to be in writing. It is apparent from the record that a three-cornered deal was made between Allen & Wickstrom and defendants, Tripp & Powell, and the men who performed the labor and furnished the stumpage, whereby it was agreed by the defendants that in consideration of the employees of Allen & Wickstrom fore-

going the enforcement of their claims for services performed and stumpage furnished, and the continuance of their assistance in the business, in order that the defendants might receive the ties manufactured from the logs which the laborers procured, that defendants, Tripp & Powell, would pay for such services, which should be evidenced by the orders fixing the amount by Allen & Wickstrom upon Tripp & Powell in favor of the several claimants. The evidence signifies the following: This arrangement was carried out on the part of Allen & Wickstrom and the employees. Orders of the purport of the one set forth above were issued by Allen & Wickstrom to the laborers and other claimants, for the amount due each. The orders were presented to defendants, and several of them were accepted in writing, and the defendants promised to pay each of such orders. It is shown by the record that over $5,000 came into the hands of defendants from the sales of the ties after the orders were given and so accepted. The acceptance or agreement to pay contemplated payment out of this fund.

1. This agreement of the defendants was not within the statute of frauds. It was a promise to pay their own debt. The motion for the several nonsuits was properly denied: *Wadhams* v. *Inman,* 38 Or. 146 (63 Pac. 11); 25 R. C. L., p. 507, § 90; note, 12 Ann. Cas. 1102; note, 126 Am. St. Rep. 496; note, 9 L. R. A. (N. S.) 54; *Barker* v. *Bucklin,* 2 Denio (N. Y.), 45 (43 Am. Dec. 726); *Townsend* v. *Long,* 77 Pa. 143 (18 Am. Rep. 438). It is stated in 25 R. C. L., page 507, Section 90, thus:

"Where a purchaser of personal property agrees, in consideration or part consideration therefor, to pay an indebtedness of the seller to the plaintiff, his promise is not within the statute."

In *Aldrich* v. *Ames,* 9 Gray (Mass.), 77, quoted in
*Rose* v. *Wollenberg,* 31 Or. 269, at page 278 (44 Pac.
382, at page 385, 65 Am. St. Rep. 826, 39 L. R. A. 378)
Mr. Justice SHAW says:

"The theory of the statute of frauds is this:   That
when a third party promises the creditor to pay him
a debt due to him from a person named, the effect
of such a promise is to become a surety or guarantor
only, and shall be manifested by written evidence.
The promise in such case is to the creditor, not to the
debtor.   For instance, if A, a debtor, owes a debt to
B, and C promises B, the creditor, to pay it, that is
a promise to the creditor to pay the debt of A.   But
in the same case should C, on good consideration,
promise A, the debtor, to pay the debt of B, and in-
demnify A from the payment, although one of the
results is to pay the debt of B, yet it is not a promise
to the creditor to pay the debt of another, but a
promise to the debtor to pay his debt.   This rule
appears to us to be well settled as the true construction
of the statute."

A promise to pay the debt of a third person arising
out of some new consideration or benefit to the prom-
isor, like the benefit which the defendants received
by the obtainment of the ties, or where there is harm
to the promisee, such as the forbearance of the claim-
ants to enforce their claims against the ties referred
to, moving to the promisor either from the promisee
or the original debtor, in this instance Allen & Wick-
strom, has been held not to be within the statute of
frauds, although the original debt still subsists and
remains unaffected by such agreement: 12 Ann. Cas.
note, at page 1103; *Am. Lead Pencil Co.* v. *Wolfe,*
30 Fla. 360 (11 South. 488); *Metzger* v. *Edson,* 25
Misc. Rep. (N. Y.) 236 (55 N. Y. Supp. 61); *Sing Sing
First Nat. Bank.* v. *Chalmers,* 144 N. Y. 432 (30 N. E.
331).

It is held that, whenever the facts show that the debtor has transferred or delivered to the promisor, for his own use and benefit, money or property in consideration of the latter's agreement to assume and pay the outstanding debt, and the latter thereupon has promised the creditor to pay, that promise is original, for the reason that by acceptance of the property under an agreement to assume and pay the debt, the promisor has made that debt his own, has become primarily liable for its discharge, and has assumed an independent duty of payment irrespective of the liability of the principal debtor.

The promise made by the defendants, Tripp & Powell, to pay the employees of Allen & Wickstrom and the acceptance of, and agreement to pay, the orders given, out of the proceeds of the ties, in order that the defendants might obtain the ties, was an agreement to pay the debt of defendants, and not alone the debt of Allen & Wickstrom. It was based upon the sufficient consideration. This ruling is not in conflict with the opinion in *Wadhams* v. *Inman,* 38 Or. 146 (63 Pac. 11), although that case was tried upon somewhat of a different theory from the present case.

In the case at bar the testimony tended to show that the claimants had no knowledge of the specific provision of the contract between defendants and Allen & Wickstrom. Whether the mortgages executed by Allen & Wickstrom in favor of defendants are sufficient to protect them or not, it is unnecessary to determine. They made a valid contract with plaintiff's assignors, and it devolves upon them to comply with their agreement.

2, 3. The charge to the jury given by the learned trial judge, above set forth, was as fair to defendants as they could reasonably expect. It plainly submitted

to the jury their theory of the case as well as the theory of the plaintiff. The jury found the facts in favor of the plaintiff, and against the defendant upon their theory of the case, as shown by verdict and the instruction. Defendant complains of instruction number 18 further charging the jury, in effect, that it was for them to determine the real intention of the parties with reference to the plaintiff's assignors taking the orders and the payment by the defendants of the orders in controversy. The court charged that whatever the defendants' real intention may have been, if the jury found from the evidence that they induced the plaintiff's assignors to believe they were to be paid from the first proceeds of the sale of the ties, and that the claim of plaintiff's assignors should be paid before defendants, and they refrained from asserting their liens, defendants would be bound. This instruction was apparently given on account of testimony of a witness for defendant, who wrote the orders, as to what he intended such orders to mean. It is clear that it was not for the witness to construe the orders; that it would only tend to confuse the jury. The orders do not bear the construction claimed by defendants. The instruction complained of should be taken together with the remaining charge given by the court, and when so construed the jury must have understood that the court had reference to the defendants leading the plaintiff's assignors to believe they were to be paid first, by the promise of defendants to accept and pay the orders. The charge to the jury, taken as a whole, is not subject to the criticism made by defendant and fairly submitted the issues to the jury. Several instructions to the jury were requested by the defendant at a time during the trial too late to conform to the rule of the court. Such refusal is alleged as an error.

It was appropriate for the Circuit Court to enforce its rules. We see no reason for additional instructions to the jury. They would only serve to confuse the issues.

We find no error in the record. The judgment of the lower court is affirmed.          Affirmed.

Burnett, C. J., and Johns and Brown, JJ., concur.

---

Motion to dismiss appeal filed January 15, allowed February 8, 1921.