## PROVINE v. WILSON.

No. 27836.   June 7, 1938.

78

Ray McNaughton and Joseph S. Thompson, for plaintiff in error.

D. H. Wilson (Frank Nesbitt and Perry Porter, of counsel), for defendant in error.

GIBSON, J. The controversy here arises from a contract between two stockholders of the Tulsa Lead & Zinc Company, executed at a time when the company was financially embarrassed to the extent of insolvency or near insolvency. The two stockholders, D. H. Wilson, plaintiff below, and George Provine, defendant below, with other stockholders, had indorsed certain notes of the corporation. Wilson and Provine, who were officers and directors, with C. W. Day, another stockholder and indorser, entered into the contract referred to in order, among other things, to settle their responsibility towards each other. They did not own an equal number of shares of stock, and their financial relationship to the corporation was not identical. Provine was a salaried official.

The contract reads as follows:

"Miami, Oklahoma, April 28, 1931.

"Whereas, the Tulsa Lead and Zinc Company, a corporation, is indebted to creditors as follows:

"One note payable to the Security Bank and Trust Company of Miami, Oklahoma, in the sum of $11,250.00, indorsed by the undersigned, C. W. Day, D. H. Wilson, George Provine and C. L. Kelly, which has been taken up and indorsed by said bank to said George Provine and D. H. Wilson, who are now the owners and holders thereof;

"One note to the First National Bank of Miami, Oklahoma, for $5,000.00, and one note to said bank for $4,000.00, both of which are indorsed by said C. W. Day, George Provine, D. H. Wilson, and A. E. Bonnell; also another note for $184.25 indorsed by George Provine and D. H. Wilson;

"And, whereas, said corporation is the principal debtor on all of said indebtedness and the undersigned, C. W. Day, George Provine and D. H. Wilson, are stockholders in said corporation and that said corporation owns a mining lease and concentrating plant, fixtures and personal property and other assets located on its lease in Ottawa county, Oklahoma, and also owns a lease in the State of Missouri, and the undersigned, C. W. Day, D. H. Wilson and Geo. Provine, hereby agree as between themselves that on account of their different proportion as stockholders, the undersigned, C. W. Day, agrees to pay one-half (½) of said indebtedness either to the banks holding said indebtedness or to the owners of said notes whoever they may be and the undersigned, George Provine and D. H. Wilson, agree to pay each one-fourth (¼) of said indebtedness, and in the event either one or two of the undersigned shall pay any part of said indebtedness that the other party shall be liable to and agrees to pay his proportionate share as above indicated; it being intended that the ultimate liability shall be in the proportion above stated.

"It is further agreed that in the event of a sale of any of the assets of said company, the same shall be credited upon some portion of said indebtedness, and the liability for the remainder shall be in the same proportion and in the event other stockholders may contribute or in the event the other indorsers on said notes shall pay any part thereof that the same shall be properly credited and the parties hereto shall be liable as between each other in the same proportion for any balance remaining due.

"It is further agreed that any renewals or changes in the form of said indebtedness or any part thereof shall not affect the agreement of the parties hereto.

"This agreement is made in consideration of the promises each to the other of the parties hereto and in order to forestall actions against the principal debtor, The Tulsa Lead & Zinc Company, or as against themselves."

Dr. Day died insolvent. Wilson and Provine made certain advancements and payments. Some of these are not in dispute.

Certain assets of the company were sold to another mining company and the proceeds were used to pay off two large notes. A balance of $250 from this sale was turned over to plaintiff. The plaintiff alleged that another sale of assets to another mining company netted $2,000, which he says was received by Provine; and that from other smaller sales and contributions from other stockholders Provine received $2,168.70.

Some of the items in the account which Wilson sues on, he alleges, were advanced under an oral agreement made by Wilson

and Provine under which insurance on the property was to be paid, and other items such as interest on the indebtedness, and wages for watchman services. The two were to share these expenses equally, since Dr. Day had died, and no other stockholders could be looked to.

Provine admitted that Wilson had made some contributions, but disputed the amount thereof. He further admitted receipt of $2,168.70 from sale of corporate property and contributions of other stockholders, claimed an advancement by himself of $12,722.25, asserted he was entitled to a salary for part of the time involved, alleged that $1,200 was due other creditors, and denied the oral agreement.

The court held the written agreement valid and found that the oral agreement existed.

The court then found that under said agreements Wilson had advanced more than Provine, and gave him judgment for half the difference, as well as judgment for $1,000 as half of $2,000 received by Provine from sales of assets and contributions from other stockholders. (The court had arbitrarily reduced the $2,168.70 items to $2,000.)

The contentions by Provine here are:

(1) The cause of action, if any, is in the corporation. And no accounting can be had until the corporation is liquidated and the loss to Wilson and Provine finally determined.

(2) The contract of April 28, 1931, calls for a preference and is void.

(3) The contract of April 28, 1931, is divisible and under it Provine became liable for only one-fourth.

(4) No oral agreement existed.

(5) The defendant had contributed more than Wilson—owned less stock—and therefore had superior equities.

Before discussing the main issues as to the written contract, we may dispose of the issues as to the oral agreement. There was ample evidence to support the court's ruling that such an agreement existed. We find, however, that the plaintiff in error has no cause for complaint even if no such contract existed. The court found that Wilson had advanced $619.72 for insurance premiums, while the defendant Provine had advanced $215.32 for insurance and $487.10 for watchman. This gave a credit in favor of Provine of $87.70. This credit is reflected in the computation of the total made by the court, and there the court necessarily credited Provine with these excess payments. The effect is the same as if the court had found against the existence of the oral agreement, but had allowed Provine a credit of $82.70 erroneously. It is evident the balance was wholly in his favor, hence he has no legal right to complain.

We next consider Provine's contention that the written contract binds him only for one-fourth of the whole advancements made thereunder. He admits that sureties have a right to enter into an agreement among themselves as to the degree of liability for which they shall be accountable, and cites Rose v. Wollenberg (Ore.) 44 P. 382. That seems to be the general rule. He cites the statutes and cases to the effect that in construing the contract the true intent of the parties is the primary object to be reached. Provine testified that the sole purpose of the contract was to fix the liability of Dr. Day and to prevent either Wilson or Provine from being charged ultimately with more than one-fourth each. Wilson and Provine at the time believed Dr. Day was solvent.

It is evident, of course, that, since all other parties were insolvent, the liability of Day, Wilson, and Provine on the notes they indorsed, as among themselves, without special contract would be equal—one-third each as long as they all remained solvent. Dr. Day and his associates owned as much, if not more stock than the combined holdings of Wilson and Provine. Wilson and Provine, therefore, believed Day's liability on the notes should be more than one-third. Provine's position as to the contract is somewhat inconsistent. He testified that the sole reason was to bind Dr. Day, that he did not think the contract was binding at all, and that he is bound only to the amount of one-fourth of the whole. On some phases of the case it is immaterial whether the contract is illegal. If illegal, it is still evident that, when Dr. Day became insolvent and Wilson and Provine remained as the only solvent indorsers, then as between themselves their obligations were still equal. McAllister v. Border, 97 Okla. 1, 222 P. 537.

We cannot accept Provine's explanation that the sole purpose of the contract was to fix Dr. Day's liability on the $11,250 note. It is evident that the $5,000, $184.25, and $4,000 notes entered into the consideration, and no doubt it was anticipated that, before anything could be realized from the

assets of the corporation, the indorsers might be called upon to pay these three notes as they had been compelled to pay the large note. There can be no doubt that they intended to bind Dr. Day as to those notes. If we accept the theory that the sole intent was to bind Dr. Day beyond the third he was otherwise liable for, the conclusion then is clear that there was no intent on the part of Wilson and Provine to change the degree of equal responsibility they bore towards each other. We know no reason why they should not make a written agreement embodying the one implied by their relationship, and know no reason why, having signed such agreement, they are not bound thereby, if the contract is otherwise valid.

Turning to the contract itself, it seems to us that it bears the interpretation that as between Wilson and Provine the liability was to be equal. No doubt exists in our minds that if the advancements under the contract had been made by Provine in excess of those made by Wilson, or he had paid the notes, he would have asked for equal contribution from Wilson. Provine's statement that the sole intent was to bind Day must mean that he and Wilson did not intend to change their relationship towards each other. It will be noted that the contract, after providing that Dr. Day shall pay one-half, and Provine and Wilson one-fourth each, then refers to their relationship not only as to the whole but specifically provides that "the parties hereto shall be liable as between each other in the same proportion for any balance remaining due." The proportion as between each other was as 2 to 1 to 1; i. e., as between Wilson and Provine each was to pay as much as the other—in the same proportion. We think, therefore, that the court was right in holding that the contract meant that each should pay the other his proportionate amount of any excess payments made by such other.

As between Wilson and Provine, liability on the large note had been divided between them, so it is of no moment on the point now being considered. Provine testified that Wilson had paid $2,488.55 on the $9,000 of notes and that he had paid $776.02; and at the trial the defendant asked the court to find said amounts were respective losses of the parties less $250 paid Wilson from assets. The court found that Wilson had paid $2,488 and Provine had paid $571.45 on the indebtedness, added the amounts to the items paid under the oral contract, as hereinbefore discussed, reached a grand total of payments by both, divided by two, and subtracted the total paid by Provine from the result, in order to reach the amount that Provine should contribute to equal the amount Wilson had contributed. The result was $916.97. From this the court erroneously subtracted $250 paid Wilson from assets and gave judgment for the balance. If the court had allowed the defendant all he claimed, $776.02 as interest payments, he would still have owed the plaintiff $855.99, and by giving Provine credit for the excess paid on the oral contract he would still have owed $804.65, which is more than the actual judgment rendered on this portion of the accounting.

The other part of the judgment arises out of the following transactions and is based largely on that portion of the contract which relates to the application of assets and contributions from other stockholders. The court found that Provine had collected from sale of assets of the company and from contributions of other stockholders the sum of $2,168.70, of which, under the agreement, Wilson should have had half. Instead of arbitrarily deducting $168.70 and dividing the remainder in two to obtain the $1,000 for which he gave Wilson additional judgment, the court should have added thereto the $250 paid Wilson, divided that sum in two and subtracted from the result the $250 paid Wilson, and thus obtained the sum of $959.35 as the amount due Wilson, instead of the sum of $1,000 awarded. This, however, is an immaterial error, for the following reasons. The judgment for $666.97 on the first part of the accounting plus the judgment of $1,000 on the second part makes a total judgment of $1,666.97; whereas, taking the figure most favorable to Provine on the first part $804.65 and adding to it the $959.35, we find the judgment should have been for the total of $1,764, or nearly $100 more than that actually rendered. There is, therefore, no valid complaint available as to the amount of the judgment.

We have eliminated the contention that the accounting should cover all advances of every kind made from the beginning. Provine denied the existence of any agreement prior to the contract, and the contract and oral agreement were specific as to what items were covered, and were prospective in their nature. We think the court rightly limited the accounting to the items contemplated by the contracts. Any other items advanced before or after the contract, of course, enter into the totals of the amount due from the corporation, but without some

agreement therefor do not enter into the amounts due from each other.

Of course, the computations above made are based on the theory that the contract is valid and enforceable in this action. If not valid, the judgment cannot be sustained in its entirety, if at all.

It is asserted that the provision as to sale of assets and the application of proceeds to the indebtedness described calls for a preference for which Wilson and Provine, as trustees in liquidation, could not legally contract. Provine's counsel on cross-examination of Wilson brought out the fact that by this provision the parties did not intend to exclude other creditors. It will be noticed that the contract does not either include or exclude other creditors by express terms. Bearing in mind the rule that a contract should be interpreted to make it legal, and considering the intent of the whole paragraph, it seems to us the ultimate intent of this paragraph is to fix the liability of the parties after all available assets from the company and contributions from the stockholders had been accounted for. Without express language to show a contemplated preference, we are loath to construe the language to give one, and believe the language fairly means that the proceeds of the sales, so far as available, should be applied on the indebtedness, and that this would not exclude other creditors.

All creditors should have shared pro rata. We find, however, that Provine paid from the proceeds of sales of assets $2,000 to creditors other than Wilson and himself, $250 to Wilson and $1,625 to himself. The balance of the $2,168.70 received by Provine was from contributions from other indorsers and is covered by another, uncontested, clause of the paragraph of the contract now under consideration. Other creditors were not entitled to share in the contributions from other indorsers, who were stockholders, but Wilson was so entitled under the terms of the contract.

The corporation owed Wilson, Provine, and other creditors approximately $25,000; hence, if there had been a pro rata distribution, the other creditors would have gotten approximately $500 instead of the $2,000 paid them, and the balance from the sale of assets would have been applied on the debts owed Wilson and Provine. Since the defendant admits the amount paid and admits the amount of the other debts, without claiming that there are in fact other creditors whose rights should be protected, and since he claims that he rightly received the proceeds from the other sales, he is in poor position to assert the rights of such other creditors, if any there be, who have not shared in distribution.

Provine testified that when he sold the assets he made proper notations of credit and debit on the company's records, so as to show the receipt of the proceeds and the payments to him, the corporation being credited on its books with the amounts received by Provine. Since Provine is shown by the record to have been the managing trustee in liquidation, we must, therefore, conclude that his actions in regard to these sales were equivalent to the payment to the company of the proceeds and the distribution of the proceeds to the company's creditors. His position, therefore, is this: "As managing trustee of the company I sold certain assets and applied the proceeds to the corporation debts, by first paying other creditors more than their pro rata part and then rightfully paying myself the balance."

We see no way that these other creditors could complain, nor do we see how the corporation could be involved. If neither Provine nor Wilson attacks the preference given other creditors, the corporation is not involved; nor do we see how the corporation would be concerned in dividends after they have been paid to its creditors, and it has been given full credit on its obligations. Wilson's position here is not that the corporation has done wrong, nor that the corporation has a wrong to right, but that Provine has received money from the corporation as dividends, which, under his contract, he was bound to divide with Wilson. Neither the corporation nor the creditors are parties to the contract, nor have they any interest in the division of these dividends after received. As between Provine and Wilson the suit is on the contract and is in the nature of an action as for money had and received by Provine for the use and benefit of Wilson. In taking the money in the beginning Provine necessarily did so under claim that the money was rightfully received by him, that is, was not due to other creditors, and also not recoverable by the corporation. We hold him to that position, and hold that now he cannot as against Wilson urge either the rights of other creditors or the rights of the corporation. The court had before it, therefore, all the parties necessary to decide this litigation.

Under this view of the record, it is clear that cases involving right or lack of right of creditors or stockholders to sue to correct wrongs against the corporation are not in

point. On the other hand, the case is more analogous to those relating to rights of co-sureties. A surety is entitled to the benefit of every security for the performance of the principal obligation acquired by a cosurety after the obligation is made. Wills v. Fuller, 47 Okla. 720, 150 P. 693; section 9636, O. S. 1931, 15 Okla. St. Ann. sec. 383. Wilson was coindorser or cosurety with Province and in effect is merely requiring Provine to account to him for the security obtained by Provine from the corporation, the principal obligor of the notes.

Under the contract Provine was bound to apply any receipts from proceeds of sales to the equal protection of his cosurety. Since, as shown above, he received these proceeds from sales under the claim that neither other creditors nor the corporation had a right to them, he must be held to have rightfully received them, but under his contract he must account to his cosurety for such proceeds. This is what the trial court required. Its action was right.

We have seen that the judgment hereon was slightly erroneous; but, since the whole suit is for an accounting, and in adjusting the items it appears that the total judgment is less than it should have been, there is no error.

The judgment is affirmed.

RILEY, PHELPS, CORN, and HURST, JJ., concur. OSBORN, C. J., BAYLESS, V. C. J., and WELCH and DAVISON, JJ., absent.